CARMEN I. DÍAZ DE LLOVET, recurrida, *v.* OFICINA DEL GOBERNADOR, recurrente.

*Número:* R-81-373      *Resuelto:* 12 de mayo de 1982

*Luis Muñoz Rivera,* abogado de la recurrida; *José Ramón Pérez Hernández,* abogado de la recurrente.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Efectivo el primero de agosto de 1973, la Sra. Carmen I. Díaz de Llovet fue nombrada en el puesto de nueva creación exento denominado *Auxiliar Administrativo II* en la oficina del entonces Gobernador Hon. Rafael Hernández Colón, área de coordinación de Programas de Gobierno, por su ayudante Sr. Rafael De Santiago. Se desempeñó hasta que el 15 de marzo de 1977 —bajo la administración del actual incumbente Hon. Carlos Romero Barceló— fue cesanteada mediante comunicación suscrita por su Ayudante Especial Sr. Domingo García, bajo el fundamento de que el puesto era de libre remoción por estimarse de *confianza*

en virtud de la nueva Ley de Personal. 3 L.P.R.A. sec. 1301 *et seq.*

No conforme, apeló a la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) aduciendo, en síntesis, que tal actuación era ilegal y nula por las siguientes razones: ausencia de facultad del Sr. Domingo García para tomar esa determinación; ser empleada de carrera y estar protegida por las disposiciones y procedimientos de la Ley de Personal; y por tratarse de un discrimen político-partidista. Sometido el caso a base de unas estipulaciones y el expediente de personal, se confirmó la cesantía.

Acudió entonces en revisión al Tribunal Superior, Sala de San Juan, reiterando sus señalamientos originales y, como error adicional, que la JASAP hubiese resuelto que ella había renunciado a las alegaciones sobre discrimen político por no haber contestado un interrogatorio. Oportunamente el foro judicial dictaminó que los autos del caso no le colocaban en posición idónea para adjudicar la controversia. Ordenó su devolución a la JASAP para que ésta resolviera si ella era o no empleada de confianza y decidiera de conformidad con la decisión emitida en *Morales Narváez y Cotto Guadalupe* v. *Oficina del Gobernador*, 112 D.P.R. 761 (1982). En reconsideración reiteró su fallo. A solicitud de la Oficina del Gobernador revisamos.(¹)

El siguiente párrafo de la recurrente sintetiza su razonamiento:

> Como cuestión procesal, respetuosamente entendemos que el Tribunal de Instancia erró al abstenerse de considerar y resolver el caso en sus méritos y devolverlo a la Honorable

---

(¹) Se apuntan como errores el que el tribunal de instancia no haya resuelto el caso en sus méritos; lo devolviera a la JASAP; la instruyera para que lo resolviese a la luz de la prueba de otros casos y usara como precedentes y fuente de derecho sus opiniones en casos pendientes de revisión ante el Tribunal Supremo (*sub judice*); no resolviera que el puesto era de carrera sino de confianza y de libre remoción; y retuviera jurisdicción.

Junta, al ordenar a la Junta a que entrara una vez a considerar el caso para resolverlo a la luz de lo resuelto por el Tribunal de Instancia en el caso de *Arnaldo Morales Narváez, et al* Vs. *Oficina del Gobernador.* En cuanto a las cuestiones sustantivas o de derecho, entendemos respetuosamente que el Honorable Tribunal Superior erró al no entrar a resolver sobre el status de la recurrida lo cual creemos es la base para la adecuada disposición de este caso. Además creemos que el Tribunal de Instancia cometió error al entender que lo resuelto por esta Honorable Superioridad en el caso de *Reyes Coreano* Vs. *Loubriel,* 80 J.T.S. [66, 110 D.P.R. 40 (1980)] es de particular aplicación al caso de *Arnaldo Morales, et al* Vs. *Oficina del Gobernador,* supra, y por ende, y a base de lo expuesto en la Sentencia de la cual aquí se recurre, al caso que nos ocupa.

Por su parte, la recurrida reafirma la posición y argumentos presentados ante la JASAP y el Tribunal Superior. La posición de las partes básicamente plantea dos interrogantes.

## I

La primera, ¿qué status y derechos tienen, bajo la nueva Ley de Personal, aquellos empleados de la Oficina del Gobernador que comenzaron a desempeñar sus funciones cuando estaba vigente la derogada? [2]

Un breve examen de la evolución histórica y el tratamiento legislativo que ha recibido esa Oficina a través de los diferentes estatutos de personal nos permite ubicar en su correcta perspectiva la respuesta. [3] Veamos.

La primera Ley de Servicio Civil en Puerto Rico fue promulgada el 14 de marzo de 1907. Su artículo cuarto creó dos clasificaciones: puestos en el Servicio Clasificado y en el Servicio No Clasificado. En virtud de su dinámica operacional el primero sería sinónimo del servicio de

---

[2] Ley Núm. 345 del 12 de mayo de 1947.

[3] Véase *Díaz González* v. *Tribunal Superior,* 102 D.P.R. 195, 203–207 (1974).

*Carrera* y el segundo de *Confianza*. Bajo esa pieza legislativa en la Oficina del Primer Ejecutivo sólo existían *dos puestos* en el Servicio No Clasificado, que correspondían a su secretario particular y su estenógrafo confidencial. Los restantes estaban bajo el Servicio Clasificado. Este estatuto experimentó varias enmiendas a través de los años, pero ninguna alteró las clasificaciones de esa Oficina.

Posteriormente fue derogado por la Ley Núm. 88 de 11 de mayo de 1931 que propiamente creó la segunda Ley de Servicio Civil en Puerto Rico. En nada afectó las clasificaciones de los puestos en la oficina ejecutiva. Tampoco las enmiendas sobrevenidas modificaron la situación.

Subsiguientemente, la Ley Núm. 345 del 12 de mayo de 1947 derogó dicho estatuto. 3 L.P.R.A. sec. 641 *et seq.* Por primera vez se conceptúa de manera científica y se aprueba un Sistema de Administración de Personal basado en el principio de mérito. Se crearon tres divisiones de puestos: Servicio Exento, Servicio Por Oposición y Servicio Sin Oposición.[4] En su Sec. 8, inciso a, enumeraba los cargos comprendidos en el Servicio Exento. Como surge de su vocablo, *Servicio Exento* significa que está excluido de la ley y sus reglamentos. *No incluía expresamente a la Oficina del Gobernador*, como tampoco personal de la misma. El inciso b, detallaba los del Servicio Sin Oposición y en su apartado 3 —como limitación a la Oficina del Primer Ejecutivo— le autorizaba y permitía solamente nombrar como máximo a ocho (8) empleados bajo esta clasificación. Además específicamente designaba los "empleados domésticos de la mansión *ejecutiva*" en el Servicio Sin Oposición. El inciso c, catalogaba en el Servicio Por Oposición los cargos o puestos de *todos* los demás funcionarios o empleados del Gobierno Insular *existentes* o los que se crearen en el futuro y que no estuvieren incluidos

---

[4] Las diferencias entre estos grupos están adecuadamente explicadas en *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923, 927-928 (1974).

específicamente en los otros dos servicios. 3 L.P.R.A. sec. 648.

Mediante enmienda de la Ley Núm. 324 de 13 de mayo de 1949 se autorizó al Gobernador a nombrar —para el buen funcionamiento de su oficina— *uno* o *más* funcionarios en el Servicio Exento o en el Servicio Sin Oposición. Esta enmienda, si bien no fijó un máximo en cuanto a la cifra de empleados que podían así ser incluidos como *exentos*, ciertamente era de carácter limitado y no constituyó una variación en la óptica legislativa prevaleciente sobre la clasificación. Por disposición administrativa, como poder nominador podía redesignar algunos puestos, pero no podía convertir su oficina en una oficina totalmente exenta, atributo que correspondía a la Rama Legislativa.

Resumiendo, la trayectoria, la clasificación y el enfoque legislativo en las distintas leyes de personal promulgadas, consistentemente habían considerado la Oficina del Gobernador dentro del sistema de mérito. Estatutariamente nunca fue comprendida en la dimensión o radio de acción del Servicio *Exento*. Únicamente por vía de excepción, concebida para casos limitados, se utilizó dicha categoría.

El primero de julio de 1973, el Gobernador Hernández Colón aprobó un reglamento para la administración de su oficina, alterando por primera vez las clasificaciones y disponiendo en su Art. 1 que *todos los puestos* serían clasificados en el Servicio Exento. Bajo esta reglamentación la señora Díaz de Llovet fue nombrada.

Así las cosas se promulga en el año 1975 el nuevo estatuto de personal. Establece sólo dos clasificaciones de puestos: Servicio de Carrera y Servicio de Confianza. En lo concerniente al caso de autos, y sobre la primera clasificación, su Art. 5.10 dispone:

> Los empleados de *confianza* son aquellos que intervienen o colaboran sustancialmente en la formulación de la política pública, que asesoran directamente o que prestan servicios directos al jefe de la agencia, tales como:

(1) *Los funcionarios nombrados por el Gobernador, sus secretarias personales y conductores de vehículos así como sus ayudantes ejecutivos y administrativos que les respondan directamente.*

. . . . . . . . . .

Los empleados de confianza serán de libre selección y remoción. Serán igualmente de confianza aquellos que aunque siendo de libre selección sólo pueden ser removidos por justa causa por disposición de ley o aquellos cuyo nombramiento sea por un término prefijado por ley.

Cuando un empleado regular en un puesto de carrera pasa a ocupar un puesto de confianza y sea removido posteriormente del cargo de confianza que ocupa, tendrá derecho a que se le reinstale en un puesto igual o similar al que ocupó en el servicio de carrera al momento en que pasó a ocupar el de confianza. (Énfasis suplido.) 3 L.P.R.A. sec. 1350.

El Art. 5.12 (3 L.P.R.A. sec. 1352) define el concepto de empleado de carrera como todos aquellos empleados no incluidos en el Art. 5.10. Advertimos que bajo esta legislación, y para fines de la clasificación, se tomarán en consideración las funciones de las personas que ocupan el puesto. De esa forma el legislador impuso una limitación a la autoridad nominadora. Otros indicadores de esa voluntad restrictiva los detectamos en el Art. 5.11(3), 3 L.P.R.A. sec. 1351, que como regla general limita el número de puestos de confianza susceptibles de así ser creados, en adición a los expresados, a un máximo de 25 por agencia.

El Art. 9 de esta ley reglamenta los derechos que tendrán los empleados públicos al entrar en vigor. Sus incisos 6 y 7 —que gobiernan la situación de autos y versan sobre la clasificación de puestos en el Servicio Exento— rezan:

(6) Los empleados que a la vigencia de esta ley estuvieren ocupando puestos en agencias, o subdivisiones de éstas que en su *totalidad* están comprendidas en el *Servicio Exento* a virtud de las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, o de leyes especiales, las cuales

pasen a ser *Administradores Individuales* a virtud de las disposiciones de la sec. 1343 de este título, serán empleados de carrera o de confianza conforme a los criterios establecidos en las secs. 1350, 1351 y 1352 de este título.

(7) Los demás empleados que *estuvieren ocupando puestos en el Servicio Exento* a virtud de las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, o de leyes especiales, serán empleados de confianza si conforme a lo establecido en las secs. 1350 y 1351 de este título estuvieren comprendidos dentro de la categoría de empleados de confianza. Si de acuerdo con las referidas secciones no estuvieren comprendidos dentro de la categoría de confianza pasarán a ser empleados de confianza mientras la autoridad nominadora los retenga en sus puestos, pero sus sucesores serán empleados de carrera. (Énfasis suplido.) 3 L.P.R.A. sec. 1421(6), (7).

La Oficina del Gobernador —agencia donde existía más de una clasificación de puestos— sostiene la aplicabilidad del inciso 7 a base de los siguientes argumentos: (a) que el Reglamento promulgado por el Gobernador Hernández Colón, en su Sec. 15 excluía del "Servicio Exento un grupo de funcionarios que antes de entrar en vigencia este Reglamento pertenecían a los Servicios Por Oposición y Sin Oposición y decidieron continuar en los mismos"; y (b) que la anterior Ley de Personal clasificaba dicha Oficina dentro de los tres tipos de servicio. En contra, la recurrida señora Díaz de Llovet se apoya en el inciso 6 por entender que *todos los puestos* en la Oficina del Gobernador estaban clasificados en el Servicio Exento en virtud del aludido Reglamento.

## II

Con este trasfondo en mente notamos que la decisión correcta exige precisar si la Oficina del Gobernador, como Administrador Individual[5] es una Agencia: (1) en la que

---

[5] Las partes descansan en la premisa de que la Oficina del Primer Ejecutivo pasó a ser un Administrador Individual según la Sec. 5.3 de la Ley, 3 L.P.R.A. sec. 1343. Véase Opinión del Secretario de Justicia del 19 de enero de 1977, Núm. 1.

*todos* sus puestos estaban comprendidos en la clasificación del Servicio Exento bajo las disposiciones de la derogada Ley de Personal, o leyes especiales; o (2) si existían otras clasificaciones tales como el Servicio Sin Oposición y Por Oposición. Bajo la primera hipótesis el nuevo estatuto provee que se haga la determinación —conforme a los criterios en éste enunciados— a base de precisar qué tipo de funciones desempeñaba el empleado. 3 L.P.R.A. secs. 1350, 1351 y 1352. Así, un empleado en funciones de carrera, pasaría a tener esa clasificación. De haber estado desempeñando labores de confianza pasaría a esa clasificación (de confianza). Sin embargo, bajo la segunda alternativa el estatuto prescribe —independientemente de las funciones que estuviese cumpliendo el empleado a la fecha de su vigencia— que serían de confianza. Finalmente, de la diferencia entre una y otra clasificación dependerá la protección que recibirá el empleado, brindada por el sistema de mérito: los de carrera, en su totalidad y los de confianza, como regla general, ningún tipo de protección. Su permanencia o separación dependerá de la sana discreción de la autoridad nominadora.

La tesis de la recurrida Díaz de Llovet no puede prevalecer. Advertimos que al momento de aprobarse la Ley de Personal actual, la Oficina del Primer Ejecutivo *estatutariamente* no estaba en la categoría de *Servicio Exento,* sino que existían tres clasificaciones. No es correcta su contención sobre el Reglamento. Su alcance no podía tener ni alterar la categoría mixta de la Agencia. El Gobernador no estaba facultado bajo la ley derogada ni bajo ley especial a proceder de esa forma. La prerrogativa, como poder nominador de incluir *"uno* o *más* funcionarios o empleados de [su] oficina . . . en el Servicio Exento o en el Servicio sin Oposición" era limitada. No conllevó una autorización para el traslado colectivo de su oficina al Servicio Exento. Ello representaba un cambio sustancial del Poder Legislativo. Muy fácilmente éste pudo redactar un

lenguaje claro, sencillo y directo permitiendo modificar la naturaleza mixta de la Oficina Ejecutiva. No se hizo. No cabe, pues, esa interpretación. Ni la trayectoria legislativa e historial así lo autorizaban. Careciendo de ese poder, no podía reglamentariamente sustituirse la voluntad legislativa. *A.P.I.A.U., Inc.* v. *Srio. de Hacienda*, 100 D.P.R. 173 (1971). Refuerza esta interpretación que la ley derogada permitía una reclasificación de exento al Servicio Sin Oposición, pero no a la inversa. Segundo párrafo del inciso e del citado Art. 8. (6)

■ Esa visión es congruente con adelantar y extender el sistema de mérito al mayor número de empleados públicos. Precisamente éste fue el objetivo y la orientación natural del estatuto. Admitir que la actuación del Gobernador en el año 1973 afectó y cambió la clasificación estatutaria es atribuirle un alcance no previsto que trastocaría la intención del legislador. El principio de mérito se fundamenta en que todos los empleados públicos deben seleccionarse, ascenderse, adiestrarse y retenerse en sus empleos con exclusiva atención a sus méritos individuales, sin distinciones por condición de raza, color, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas. La clave es la idoneidad del aspirante al servicio público. Así, el proceso de selección de candidatos resulta ser uno de los aspectos más cruciales en el funcionamiento de este tipo de sistema. En este caso la señora Díaz de Llovet fue nombrada para un puesto exento directamente. Al ser designada, la Oficina del Gobernador no era una

---

(6) Leía:

"Cualquier agencia, corporación pública o subdivisión política comprendida en el Servicio Exento o en el Servicio sin Oposición podrá, a solicitud propia y con la aprobación del Director ser incluída en el Servicio por Oposición en cuanto a la totalidad o cualquier parte de sus funciones, programas o actividades; y cualquier agencia, corporación pública o subdivisión política comprendida en el Servicio Exento podrá a solicitud propia y con la aprobación del Director, ser incluída en el Servicio sin Oposición en cuanto a la totalidad o cualquier parte de sus funciones, programa o actividades."

agencia exenta en su totalidad. Por lo tanto, el inciso 7 del Art. 9 de la Ley de Personal es el aplicable. Como corolario, ella, como empleada exenta, se convirtió en de confianza por imperativo de la nueva legislación.

### III

Lo anterior no dispone del recurso. Todavía debemos examinar si estuvo correcta la JASAP al estimar renunciadas las alegaciones sobre discrimen político-partidista por no haberse contestado un interrogatorio. Debido al decreto del tribunal de origen, éste no hizo pronunciamiento al respecto.

Los autos ante nos demuestran que la alegación de discrimen fue originalmente planteada en el escrito de apelación *enmendado*. Con posterioridad se estipuló que la cuestión sería sometida en una vista ulterior de ser necesaria la misma. Subsiguientemente la Oficina del Gobernador radicó una moción para que se le permitiera hacer descubrimiento de prueba limitado al aspecto del discrimen. Después lo notificó. No aparece que fuera contestado. Ahora bien, tampoco surge que la JASAP concediera —a tono con el Art. 1(30) de su Reglamento— la autorización previa necesaria para tal trámite. En estas circunstancias, erró dicho organismo al imponer la sanción. Primero debió cumplir con las reglas que gobiernan sus procedimientos internos. *Hernández García* v. *J.R.T.*, 94 D.P.R. 22 (1967). Lo expuesto trasciende el mero formalismo procesal. La alegación de discrimen por razón de ideas político-partidistas es de carácter serio. Ante la misma no deben erigirse obstáculos fáciles que vulneren el debido proceso de ley. Como parte de nuestro mandato la JASAP debe pasar juicio primero sobre dicha alegación. No milita en contra la clasificación de empleada de confianza de la señora Díaz de Llovet. Si bien por tal condición no goza de un interés propietario sobre su trabajo, resulta de aplicación la doctrina de *Branti* v.

*Finkel*, 455 U.S. 507 (1980). Bajo la misma, tendría una causa de acción dirigida a retener su empleo de confianza si la causa del despido se debió a razones político-partidistas, salvo que el Estado probara que la afiliación política era un requisito apropiado para el desempeño efectivo del puesto.

Finalmente el señalamiento de error respecto a que el Sr. Domingo García, Ayudante Especial del Gobernador, no tenía facultad en ley para decretar la separación no fue cometido. La recurrida Díaz de Llovet invoca la Ley Núm. 104 de 28 de junio de 1956 (3 L.P.R.A. secs. 1a(a) y (b)), que prescribe que el Primer Ejecutivo puede delegar sus funciones, siempre y cuando no esté en contravención con un estatuto específico o con la Constitución y que la delegación sea por escrito *a través* de una *proclama* o *boletín administrativo* firmado por el Gobernador. El historial legislativo demuestra que entre las funciones contempladas como delegables estaban, "cambios de estados de plaza en la Oficina del Gobernador". *Diario de Sesiones*, 1956, Vol. 8, Tomo II, pág. 900.

El Gobernador Romero Barceló, mediante carta fechada el día 3 de enero de 1977 autorizó al señor García "a *firmar* todos los contratos estatales y federales que tengan relación con la Oficina del Gobernador en representación del Estado Libre Asociado de Puerto Rico" y "todos los documentos oficiales relacionados con la Oficina del Gobernador".

■ Evidentemente se incumplió con el requisito de publicación. Sin embargo, la recurrida no nos argumenta persuasivamente qué efectos tuvo esa inobservancia en su caso. Por un lado el estatuto guarda silencio. Y por otro, su nombramiento en el año 1973 fue hecho por un funcionario de igual jerarquía, el entonces ayudante ejecutivo Sr. Rafael De Santiago. De nada puede quejarse.

Por los fundamentos expuestos *se dictará sentencia en que se modifique la del Tribunal Superior, Sala de San*

*Juan en los siguientes extremos: resolviendo que a la Oficina del Gobernador le aplica el inciso 7, Art. 9 de la Ley de Personal vigente; que la Sra. Carmen I. Díaz de Llovet al momento de ser cesanteada era empleada de confianza; y que la JASAP debe dirimir en sus méritos la contención de discrimen por razones políticas con sujeción a lo aquí resuelto. Así modificada, será confirmada.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

La opinión se erige sobre el supuesto equivocado de que la enmienda de la Sec. 8 de la anterior Ley de Personal del Gobierno (Núm. 345 de 12 mayo, 1947) por Ley Núm. 324 de 13 mayo, 1949 de algún modo limitó el número de funcionarios o empleados que el Gobernador podía incluir en el Servicio Exento o en el Servicio Sin Oposición. Dice dicha enmienda:

> Sec. 8, inciso 26.— Se faculta al Gobernador para que, *en los casos en que él estime necesario para el buen funcionamiento de su oficina*, de la Mansión Ejecutiva y del Negociado de Presupuesto, incluya a uno o más funcionarios o empleados de esas Oficinas en el Servicio Exento o en el Servicio sin Oposición. (Énfasis nuestro.) 3 L.P.R.A. sec. 648.

El texto no deja dudas sobre la facultad del anterior Gobernador señor Hernández Colón para aprobar el Reglamento de su oficina cuyo Art. 1 dispuso que todos los puestos serían clasificados en el Servicio Exento. Fue bajo esta disposición que recibió nombramiento de Auxiliar Administrativo II la recurrida Carmen I. Díaz de Llovet.

Hay que presumir que el Gobernador estableció dichas clasificaciones y que la recurrida fue eventualmente nombrada en ejercicio de su mejor criterio sobre las necesidades para "el buen funcionamiento" de la Oficina del Primer Ejecutivo cuya facultad no quiso restringir el

legislador según aparece de la enmienda transcrita, pues significativamente no siguió el método de especificar el número límite de empleados en el Servicio Sin Oposición y en el Exento, como lo hizo con otras agencias.

Resulta insostenible la posición adoptada en la opinión de que el referido Reglamento de la Oficina del Gobernador es nulo por haberse éste excedido en las facultades a él conferidas por ley; ninguna ley le prohibía incluir todo su personal en el Servicio Exento. Debe, pues, considerarse la Oficina del Gobernador como agencia que *en su totalidad* estaba comprendida en el Servicio Exento y en consecuencia aplicar al caso que nos ocupa el núm. 6° del Art. 9 de la Ley de Personal de 1975 (3 L.P.R.A. sec. 1421(6)) que ordena:

> Los empleados que a la vigencia de esta ley estuvieren ocupando puestos en agencias, o subdivisiones de éstas que en su totalidad están comprendidas en el Servicio Exento a virtud de las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, o de leyes especiales, las cuales pasen a ser Administradores Individuales a virtud de las disposiciones de la sec. 1343 de este título, serán empleados de carrera o de confianza conforme a los criterios establecidos en las secs. 1350, 1351 y 1352 de este título.

No puede determinarse en revisión, como propone la opinión, que la recurrida advino empleada de confianza bajo la actual Ley de Personal. Hay hechos por depurar y fue correcta la decisión del Tribunal Superior que a falta de determinaciones factuales en el caso, ordenó la devolución del asunto a la Junta de Apelaciones del Sistema de Personal (JASAP) para que haga las adjudicaciones que corresponda. Si la recurrida no era ayudante administrativo que le respondiera *directamente* al Gobernador —y sabemos que ella no fue nombrada por éste sino por su ayudante Rafael De Santiago lo que sienta presunción de que era a éste a quien respondía directamente— entonces ella vino a ser por disposición del citado inciso (6) del Art. 9 de la Ley una empleada de carrera en virtud de lo dis-

puesto en los Arts. 5.10, 5.11 y 5.12 de la Ley de Personal, 3 L.P.R.A. secs. 1350, 1351 y 1352. En tal caso no podía despedírsele, como lo fue, y sí debe ser reinstalada en puesto igual o similar al último que ocupó. 3 L.P.R.A. sec. 1350, párrafo final, según enmendado por Ley Núm. 1 de 17 de julio, 1979. *Cf. Fidalgo Colón* v. *Adm. Derecho al Trabajo*, 112 D.P.R. 1 (1982).

El caso debe remitirse a JASAP para que determine si la recurrida, una empleada que bajo la anterior Ley ocupaba un puesto comprendido en el Servicio Exento, por no ser propiamente de confianza, es acreedora a la clasificación de empleada de carrera bajo la nueva Ley y a tenor de los preceptos aquí examinados; y para que adjudique también la reclamación de discrimen político formulada por la recurrida.

Así modificada, confirmaría la sentencia revisada.