Bajandas Vélez, Jueza Ponente
*1042 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Sr. Norman Rodríguez Rivera (el Sr. Rodríguez) en el recurso KLRA-2003-00914 y nos solicita la modificación del remedio concedido en la Resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) el 22 de octubre de 2003 y notificada el 31 del mismo mes y año. Dicha Resolución dejó sin efecto la destitución del Sr. Rodríguez decretada por el Cuerpo de Emergencias Médicas (CEM), y ordenó que se eliminara de su expediente toda la información relativa a la acción disciplinaria revocada y que el CEM aceptara la carta de renuncia del Sr. Rodríguez, la cual había sido previamente rechazada.
Por su parte, el 23 de diciembre de 2003, el CEM presentó el recurso KLRA-03-00924. En éste solicita la revocación de la Resolución antes mencionada.
Evaluados los escritos de las partes en ambos recursos, al igual que el derecho aplicable, resolvemos revocar la Resolución recurrida.
I
El Sr. Rodríguez ocupaba la plaza de carrera M-0016 de Técnico de Emergencias Médicas en el CEM. Por ser dicho puesto uno sensitivo al tenor del Reglamento para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Comisión de Seguridad y Protección Pública y sus Componentes (Reglamento 5817 o el Reglamento), el 5 de octubre de 1999, el Sr. Rodríguez fue sometido a una prueba para la detección de sustancias controladas efectuada por monitores del Instituto de Ciencias Forenses (ICF).
Surge de las determinaciones de hechos de la Oficial Examinadora de JASAP, que el Sr. Rodríguez entregó una muestra de orina de cuarenta (40) mililitros cuando, según el Reglamento, la muestra mínima es de sesenta (60) mililitros. También se desprende de dichas determinaciones, que tampoco se le apercibió sobre su derecho a retener parte de la mencionada muestra para que realizara un examen de corroboración en un laboratorio independiente. 
El 9 de diciembre de 1999, el Sr. Rodríguez presentó una carta de renuncia dirigida al Director Ejecutivo del CEM, Sr. Heriberto Saurí (Sr. Saurí), en la que expresaba su deseo de que la misma se hiciera efectiva inmediatamente. Posteriormente, el 13 de diciembre de 1999, el Sr. Saurí suscribió tres cartas dirigidas al Sr. Rodrígúez. La primera titulada “Me Propongo: Destitución”, le informaba a éste que por haber dado positivo en la prueba de drogas antes mencionada se proponía destituirlo de su puesto al amparo del Artículo 11, inciso 8 del Reglamento 5817, y que tenía derecho a solicitar una vista administrativa informal. La segunda carta era una de suspensión de empleo por aparentemente haber violado disposiciones del aludido Reglamento. Finalmente, en la tercera carta le notificó al Sr. Rodríguez que no podía aceptar su renuncia debido a que éste tenía un caso pendiente ante la División de Investigación, Propiedad, Recursos Humanos, Transportación y Comunicaciones del CEM. 
*1043 Conforme a lo informado en la aludida primera carta, el Sr. Rodríguez solicitó una vista informal. Ésta se llevó a cabo el 18 de mayo de 2000. En la misma se desfiló el testimonio del coordinador del proceso de recolección de la muestra para la prueba de drogas, el del auxiliar de éste y el de la químico forense que corroboró el resultado positivo de la prueba. Luego de ella, el 24 de julio de 2000, el CEM, por medio del Sr. Saurí, determinó destituir al Sr. Rodríguez por haber violado el Art. 11, Inciso 8 del Reglamento. 
Insatisfecho con dicha determinación, el 10 de agosto de 2000, el Sr. Rodríguez presentó un escrito de apelación ante JASAP. En éste alegó que el CEM violó su debido proceso de ley al destituirlo por haber dado positivo en la prueba de drogas antes mencionada. Específicamente, señaló que la prueba se realizó con una muestra menor a la requerida por el Reglamento; que la cadena de custodia de la muestra no fue adecuada al no estar rotulada adecuadamente y no ser entregada al ICF el mismo día en que se colectó; que no se le informó del derecho que tenía de obtener parte de la muestra para realizar un examen de corroboración en un laboratorio de su selección; y por último, que no se le ofreció tratamiento rehabilitador y preventivo.
El 16 de noviembre de 2000, el CEM presentó su contestación a la apelación. En ésta alegó que según los testimonios de los peritos que declararon en la vista administrativa sobre la destitución, una muestra de orina de cuarenta (40) mililitros es suficiente para que se realice una prueba confiable y que para que el Sr. Rodríguez obtuviera parte de la muestra para hacer una prueba independiente tenía que haberla solicitado, pues no era su obligación informárselo. También, indicó que la cadena de custodia se siguió correctamente, por lo que las alegaciones en tomo a la rotulación y transporte tardío de la muestra son erróneas. Por último, argüyó que, al arrojar su primer resultado positivo, el Sr. Rodríguez podía ser despedido sin brindarle tratamiento rehabilitador por ocupar una posición catalogada como sensitiva en una Agencia de Seguridad Pública.
Después de haber celebrado la vista administrativa, el 22 de octubre de 2003, notificada el 31 del mismo mes y año, JASAP emitió su Resolución en la que declaró ha lugar la apelación incoada por el Sr. Rodríguez y ordenó al CEM dejar sin efecto la destitución y retirar del expediente tal determinación y cualquier documento relacionado. Finalmente, ordenó al CEM que aceptara, tal y como fue sometida, la renuncia presentada por el Sr. Rodríguez. De esta Resolución recurren ambas partes.
Luego de varios trámites procesales, el 17 de diciembre de 2003, el Sr. Rodríguez presentó el recurso KLRA-03-00914. En dicho escrito hace los siguientes señalamientos de error:

“Erró la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) al disponer como supuesto remedio ante la revocación de la destitución, que la autoridad nominadora recurrida procediera a aceptar la renuncia presentada por el recurrente, cuando la referida aceptación de la renuncia no es un remedio cónsono con la determinación de dejar revocada la destitución ni constituye la renuncia o su aceptación, una controversia planteada por las partes ante JASAP.

Erró la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) al ordenar la revocación de su destitución y no ordenar la reposición del recurrente en su puesto desde la fecha de la suspensión de empleo y el consecuente pago de salarios dejados de percibir desde la fecha de la destitución hasta la fecha en que se de (sic) la reposición en el puesto, habiendo determinado que al recurrente se le violó el debido proceso de ley sustantivo, al ser destituido a base del resultado de prueba obtenido (sic) de una muestra menor a la muestra mínima requerida en el reglamento aplicable. ”

En su argumentación, el Sr. Rodríguez sostiene que cuando el CEM rechazó su carta de renuncia la convirtió en una no puesta desde ese momento en adelante y que al quedar revocada la destitución, se restaura el estado de hecho y derecho previo. Por lo tanto, señala que debe ser repuesto a la posición que ocupaba al 13 de diciembre de 1999, fecha en que fue suspendido de su empleo, con la restitución de los salarios dejados de percibir y los beneficios acumulados. Por último, plantea que al ordenar la aceptación de su renuncia, JASAP *1044 resolvió una controversia que en ningún momento fue levantada por las partes.
Por otra parte, en su recurso de revisión administrativa número KLRA-03-00924, el CEM levantó los siguientes señalamientos de error:

“Erró la Junta de Apelaciones del Sistema de Administración de Personal al determinar que el Cuerpo de Emergencias Médicas violó el debido proceso de ley del apelante y recurrido al no cumplir con el procedimiento para las pruebas establecido en el Reglamento 5817 de la Comisión de Seguridad y Protección Pública y sus Componentes, el 7 de junio de 1998, que especifica que la muestra de urinálisis no será menor de 60 mililitros.

Erró la Junta de Apelaciones del Sistema de Administración de Personal al ordenar al Cuerpo de Emergencias Médicas que debe aceptar la renuncia del apelante y recurrido, dejar sin efecto la destitución del apelante recurrido y remover del expediente y de cualquier documento tal determinación. ”

En esencia, el CEM argumenta que no toda desviación reglamentaria conlleva la supresión de una prueba de drogas. Arguye que como el Reglamento establece que serán rechazadas las muestras que no aseguren su integridad y que no cumplan con los requisitos allí establecidos y en el caso de autos los testigos declararon que una muestra mayor de treinta (30) mililitros es suficiente para realizar una prueba de drogas, es menester concluir que la muestra de cuarenta (40) mililitros tomada al Sr. Rodríguez es lo suficientemente confiable para ser admitida, aunque en este aspecto no se haya cumplido con el Reglamento. En cuanto a la orden de aceptar la renuncia, plantea que ésta no apoya la política pública del Gobierno de erradicar del servicio público la adicción a drogas, ya que permitiría que el Sr. Rodríguez reingrese al servicio público sin problema alguno. Además, sostiene que JASAP está impedida de obligar a la autoridad nominadora del Sr. Rodríguez a aceptar la renuncia de éste, pues su jurisdicción está limitada por la Ley de Personal.
El 5 de febrero de 2004, emitimos una Resolución consolidando los recursos antes mencionados, debido a que ambos recurren de la misma Resolución. También le concedimos treinta (30) días a las partes para que se opusieran al recurso en el que fueran la parte recurrida.
En cumplimiento de nuestra orden, el 23 de marzo de 2004 compareció el CEM oponiéndose al recurso KLRA-03-00914. En dicho escrito, aunque coincide con el Sr. Rodríguez en que JASAP no tiene autoridad para ordenarle aceptar la renuncia, sostiene que la misma no procede porque la destitución es válida en derecho. Sus restantes planteamientos son prácticamente idénticos a los esbozados en su recurso de revisión.
Finalmente, el 1 de abril de 2004, el Sr. Rodríguez presentó su escrito en oposición al recurso KLRA-03-00924. Expone que una agencia está obligada a dar cumplimiento estricto a la legislación y reglamentación que le sea aplicable y a los reglamentos que promulgue. Concluye que lo que persigue el CEM con sus planteamientos es que el incumplimiento del Reglamento quede subsanado por la presunta confiabilidad que tuvo la prueba de dopaje tomada al Sr. Rodríguez.
II
Como se sabe, la facultad revisora de los tribunales a las decisiones emitidas por una agencia administrativa es limitada. “El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho”. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. ed., Bogotá, Forum, 2001, pág. 534.
La función revisora del tribunal, aunque restringida, tiene como propósito fundamental el delimitar la discreción de los organismos administrativos, además de velar porque sus actuaciones sean conformes a la ley y *1045 estén dentro del marco del poder delegado. T-JAC Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 129 (1998); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997).
Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (en adelante, L.P.A.U.). 3 L.P.R.A. § 2101 et. seq. “Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. 3 L.P.R.A. §2175. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal. ” Id. Es por tanto indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revísora responsablemente.
El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como “aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión”. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997); Hilton Hotels v. Junta Salario Mínimo, 1A D.P.R. 670, 687 (1953). Se ha reconocido la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. Pacheco Torres v. Estancias de Yauco, S.E., 2003 J.T.S. 148; Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 109 (1997). Dicho análisis requiere que la evidencia sea considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, pág. 437. Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.
Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada ...y hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba”. Metropolitan S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Ramírez v. Depto. de Salud, supra; Chase Manhattan v. Emmanuelli Bauzá, 111 D.P.R. 708 (1981).
En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Rebollo Vda. de Liceaga v. Yiyi Motors, 2004 J.T.S. 4; Oficina de Etica Gubernamental v. Román González, 2003 J.T.S. 74; Puerto Rico Telephone Co. v. Junta, 2000 J.T.S. 98. Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. Misión Ind. de P.R. v. J.P., supra, a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. Id.; T-JAC Inc. v. Caguas Centrum Limited, supra, 80.
En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hecho y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de hecho y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. Fernández Quiñones, Ob. Cit., pág. 561.
*1046 En vista de que dentro de su función adjudicativa, las agencias administrativas han de intervenir con los intereses de libertad y propiedad de los individuos, y que todo empleado público tiene un legítimo interés propietario sobre su empleo, se hacen extensivas a los procedimientos ante éstas las garantías del debido proceso de ley. Nuestro Tribunal Supremo ha reiterado que si bien es cierto que el debido proceso no es un molde rígido que prive de flexibilidad a los órganos administrativos, una vez está en juego un interés individual de libertad o propiedad, hay que determinar cuál es el procedimiento exigido, el cual dependerá de las circunstancias dadas, salvaguardando siempre que el mismo sea justo e imparcial, no arbitrario. López Vives v. Policía de P.R., 118 D.P.R. 219, 230 (1987); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 888 (1993).
“El debido proceso se manifiesta en dos dimensiones distintas: sustantiva y procesal. Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo.” Rafael Rosario & Assoc. v. Depto. Familia, 2002 J.T.S. 93, 157 D.P.R. _ (2002); Almonte et. al. v. Brito, 2002 J.T.S. 43, 156 D.P.R. _ (2002); Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, a la pág. 888.
Las fuentes del debido procedimiento de ley son varias. Entre ellas se encuentran la Constitución de Puerto Rico y la de los Estados Unidos, la Ley de Procedimiento Administrativo Uniforme (LPAU), la jurisprudencia y los reglamentos que gobiernan los procedimientos reglamentarios de cada agencia. Existe una diferencia entre el debido proceso de ley en su cárácter constitucional y los derechos procesales consagrados por la vía estatutaria y reglamentaria. Estos últimos son de gran importancia, puesto que los requisitos procesales sólo se obtienen mediante una lectura de las disposiciones pertinentes de las agencias con la LPAU en un análisis que las interrelacione. Véase Fernández Quiñones Demetrio, Ob. Cit., págs. 307-308.
Se han hecho extensivas a los procedimientos administrativos las siguientes garantías tradicionalmente reconocidas: la concesión a una vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita a su favor, una decisión tomada a base del expediente administrativo y la presencia de un adjudicador imparcial. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987); Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791, 795 (1973). Véase además, Rivera Rodríguez & Co. v. Lee Stowell, etc., supra. La LPAU, igualmente, reconoce las garantías antes señaladas en su sección 3.1. 3L.P.R.A. §2151.
En cuanto a la imposición de sanciones y la revisión judicial, los tribunales le han reconocido amplia discreción a las agencias administrativas en la selección de las medidas que le ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y la ley. Bajo esta doctrina, si la decisión administrativa está basada en evidencia sustancial y no es ultra vires y tiene además una relación razonable con los actos que se quieren prohibir, los tribunales brindarán considerable deferencia a la sanción impuesta por las agencias. ELA v. Frigorífico y Almacén del Turabo, Inc., 2001 J.T.S. 125; Comisionado de Seguros v. Antilles Insurance Company, 145 D.P.R. 226 (1998).
De otra parte, el 14 de agosto de 1997, se aprobó la Ley para Reglamentar las Pruebas para la Detección de Sustancias Controladas en el Empleo en el Sector Público. El propósito de ésta es prevenir el uso de sustancias controladas por los empleados del sector público. El Artículo 3 de la aludida ley dispone que:

“Esta Ley [este capítulo] pretende delinear las circunstancias en las que se permitirá al Gobierno de 
*1047
Puerto Rico administrar pruebas para detectar el uso de sustancias controladas en el empleo público y prescribir los requisitos que al efecto deberán ser observados por las agencias. Ha de servir, además, para establecer las garantías mínimas necesarias para proteger la intimidad e integridad personal del funcionario o empleado, sujeto a las pruebas y garantizar al máximo la confiabilidad, precisión y confidencialidad de sus resultados en un contexto de orientación, tratamiento y rehabilitación, encaminado al fiel desempeño de las funciones y deberes del servidor público, conforme a los recursos disponibles del Estado. ” 

Dicha ley establece en su Artículo 25 que toda agencia y agencia de seguridad realizarán dentro del término de ciento ochenta (180) días todas las gestiones necesarias para la implantación de las disposiciones de la ley, entre las que está el aprobar reglamentos. 
En cumplimiento con la aludida disposición, el 25 de junio de 1998, la Comisión de Seguridad y Protección Pública y sus Componentes aprobó el Reglamento para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Comisión y sus Componentes. Dicho Reglamento establece el procedimiento para efectuar las pruebas de sustancias controladas. En el mismo se indica que “[s]e le advertirá al funcionario o empleado por escrito que de así solicitarlo se le podrá entregar parte de la muestra a un laboratorio de su selección para que tenga la oportunidad de efectuar un análisis independiente de la misma... ”, y que el monitor se asegurará de que "la muestra para urinálisis en el Instituto no sea menor de 60 mililitros y que la cinta adhesiva de seguridad esté debidamente iniciada. ” 
Asimismo, el Artículo 11(A)(4)(a) del mencionado Reglamento establece lo siguiente:
“El personal del laboratorio del Instituto recibirá las cajas de muestras de los monitores y procederá a inspeccionarlas. Una vez determinada la integridad de los sellos en las cajas, procederá a abrirlas, contará los envases de orina y los inspeccionará para estar seguro de que la cinta de seguridad no fue rota y que tienen el volumen mínimo requerido. Muestras que no aseguren su integridad ni cumplan con los requisitos establecidos en este Reglamento serán rechazadas inmediatamente. El Director cotejará que la documentación recibida en su oficina esté completa y debidamente complementada. ” (Enfasis nuestro.)
Por otro lado, el Artículo II, Sección 16 de la Constitución del Estado Libre Asociado reconoce, entre otros asuntos, "el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella". 1 L.P.R.A. § 16. En su interpretación sobre el alcance de la disposición constitucional, el Tribunal Supremo ha expresado reiteradamente que no se trata de un derecho absoluto o irrestricto. Padilla Colón v. Centro Gráfico del Caribe, 144 D.P.R. 952, 958 (1998); Pueblo v. Villafañe Fabián, 95 J.T.S. 132, pág. 126; Asociación de Doctores en Medicina al Cuidado de la Salud Visual, Inc. v. Morales y Colegio de Optómetras de P.R., 132 D.P.R. 567, 586 (1993).
En ausencia de una disposición en la Ley de Personal del Servicio Público de Puerto Rico sobre el término que tiene un empleado público para presentar una carta de renuncia y el requisito de la aceptación de la misma para su validez, es menester concluir que un empleado público no está obligado a trabajar permanentemente para la autoridad nominadora esperando a que ésta le acepte la renuncia. Candelario Muñiz v. Tribunal Superior, 101 D.P.R. 25, 29 (1973). No obstante, el Tribunal Supremo ha reiterado que el empleado, amparándose en que la renuncia no tiene que ser aceptada para ser efectiva, “...no puede evadir una investigación dirigida a la formulación de cargos que, de ser probados, resultarían en su destitución.” (Énfasis nuestro.) Brunet Justiniano v. Hernández Colón, 130 D.P.R. 248, 262 (1992); Candelario Muñiz v. Tribunal Superior, supra, a la pág. 30.
Por último, el Reglamento de Personal para Empleados de Carrera de Emergencias Médicas, dispone al respecto en la see. 8.6 que:
*1048 “Cualquier empleado podrá renunciar a su puesto libremente mediante notificación escrita al Director Ejecutivo. Esta comunicación se hará con no menos de quince (15) días de antelación a su último día de trabajo, excepto que el Director Ejecutivo podrá aceptar renuncias presentadas en un plazo menor. El Director Ejecutivo deberá, dentro del término de quince (15) días de haber sido sometida dicha renuncia, notificar al empleado si acepta la misma o si la rechaza por existir razones que justifican investigar la conducta del empleado. En caso de rechazo, el Director Ejecutivo, dentro del término más corto posible, deberá realizar la investigación y determinar si acepta la renuncia o procede a la formulación de cargos a tenor con el Artículo 8 de este Reglamento. ” (Enfasis nuestro.)
III
La controversia central en ambos recursos consiste en determinar si se sostiene la destitución del Sr. Rodríguez según lo establecido en el Reglamento para la Detección de Sustancias Controladas en Funcionarios y Empleados de la Comisión de Seguridad y Protección Pública y sus Componentes. 
No existe controversia en este caso en que, según determinó la Oficial Examinadora de JASAP, la muestra de orina obtenida del Sr. Rodríguez para realizar la prueba de drogas fue menor a los mililitros requeridos en el Art. 11(A)(3)(d) del Reglamento. También, no es hecho disputado que durante el proceso de obtención de la muestra no se le informó al Sr. Rodríguez que parte de la muestra tomada podía ser referida a un laboratorio independiente para un examen de corroboración.
No obstante, del propio Reglamento surge que para que una muestra pueda ser rechazada, debe haberse violado alguna disposición reglamentaria y la muestra haber perdido su integridad. El récord del caso ante nos demuestra que las violaciones Reglamentarias ocurridas no afectaron la confiabilidad de la prueba tomada al Sr. Rodríguez. Ello queda sustentado en los testimonios desfilados durante la vista administrativa celebrada en el procedimiento de destitución ante el CEM. Según lo declarado por el personal del ICF que intervino con la muestra y su análisis, a saber: el Sr. Angel L. Acosta Castillo, Coordinador de Pruebas de Sustancias Controladas, la Sra. Marie Carmen López, Químico Forense II, y del Sr. Arturo Díaz Ayala, Auxiliar de Laboratorio en la División de Detección de Sustancias Controladas, una muestra de cuarenta (40) mililitros es suficiente y aceptable para realizar una prueba de sustancias controladas. Además, éstos establecieron que para corroborar un resultado positivo se necesita únicamente un (1) mililitro por cada droga que vaya a ser examinada. 
Durante toda la trayectoria del caso, el Sr. Rodríguez ha amparado su posición en que las violaciones reglamentarias ocurridas durante la toma de su muestra violaron su debido proceso de ley. Empero, en ningún momento ha alegado que el resultado positivo impugnado fuera uno errado o que la muestra tomada a éste se vio afectada de tal forma que menoscabara su confiabilidad. Las alegadas desviaciones reglamentarias aducidas por el Sr. Rodríguez, según el propio texto del Reglamento 5817, no provocan, por sí solas, la supresión de una muestra. Sólo la provoca si se afecta la confiabilidad de la misma, cosa que aquí no fue establecida.
El Sr. Rodríguez tampoco presentó prueba alguna ante el CEM que controvirtiera los testimonios periciales desfilados. Éste meramente se limitó a contrainterrogar a los testigos que declararon respecto a la muestra de orina que le fue tomada. Igualmente, del expediente no se desprende que el Sr. Rodríguez manifestase o hiciese saber su deseo de solicitar que parte de su muestra se le hiciese llegar a un laboratorio independiente para que éste realizara un análisis de corroboración, cuando éste tenía copia del Reglamento que así lo estipulaba. Además, su renuncia con vigencia inmediata al puesto de Técnico de Emergencias Médicas, días antes de que se le notificara que su prueba había salido positiva, ciertamente, además de crear sospechas, resulta incompatible con dicho planteamiento.
Por todo lo antes expresado, concluimos que JASAP incidió al revocar la determinación del CEM de destituir al Sr. Rodríguez. El récord ante nos refleja que las desviaciones reglamentarias ocurridas durante la *1049 toma de la muestra que se utilizó para realizarle la prueba de sustancias controladas al Sr. Rodríguez, no conllevaron la supresión de dicha prueba y, mucho menos, una violación a su debido proceso de ley. Además, del récord se desprende que el Sr. Rodríguez, durante el procedimiento disciplinario al que se vio expuesto, tuvo derecho a una vista previa a su destitución con una oportuna y adecuada notificación, a ser oído y a confrontarse con los testigos, a presentar prueba oral y escrita a su favor y, finalmente, a que la decisión fuera tomada por un adjudicador imparcial a base del expediente administrativo, por lo que es menester concluir que se le ofrecieron todas las garantías procesales.
Por otro lado, el que la Constitución del Estado Libre Asociado de Puerto Rico le conceda el derecho a todo trabajador de escoger libremente su ocupación y de renunciar a ella, no conlleva el que, como cuestión de hecho, una renuncia tenga siempre que ser aceptada por la autoridad nominadora. Es claro que esta libertad no es infinita y que mediante la presentación de una carta de renuncia un empleado “...no puede evadir una investigación dirigida a la formulación de cargos que, de ser probados, resultarían en su destitución.” 
Según dispone el Reglamento de Personal del CEM, su Director Ejecutivo puede rechazar una renuncia dentro de los quince (15) días siguientes a la fecha en que el empleado la somete, si existen razones que justifiquen investigar la conducta de éste. 
En el caso de autos, se desprende del récord que el 9 de diciembre de 1999, o sea, cuatro (4) días antes del ser notificado del resultado positivo de su prueba de sustancias controladas, el Sr. Rodríguez presentó su carta de renuncia al CEM solicitando que la misma se hiciera efectiva inmediatamente. Surge también que posteriormente, el 13 de diciembre de 1999, el Sr. Saurí rechazó dicha carta de renuncia porque el empleado tenía un caso pendiente ante la División de Investigación, Propiedad, Recursos Humanos, Transportación y Comunicaciones del CEM.
Evaluadas las disposiciones del Reglamento de Personal al tenor de los hechos antes mencionados, resulta forzoso concluir que éste no cumplió con el requisito de presentar su carta de renuncia con 15 días de antelación a su último día de trabajo, incluido en la See. 8.6 de dicho Reglamento. Asimismo, el Sr. Rodríguez pretendió que la misma fuese aceptada con efecto inmediato, lo que también va contra las disposiciones del aludido Reglamento de Personal. Por otro lado, el CEM, al negarse a aceptarla a los pocos días de presentada, actuó de conformidad con el Reglamento, pues la rechazó dentro del plazo correspondiente para ello y por razón de la investigación y formulación de cargos al Sr. Rodríguez por haber dado positiva su prueba de drogas. Advertimos que si el CEM hubiese aceptado la carta de renuncia del Sr. Rodríguez, según fue solicitado, éste no hubiese tenido que responder por el resultado positivo de su prueba de drogas. Más aún, ello hubiese permitido que un empleado en una posición sensitiva, como la de Técnico de Emergencias Médicas I, evadiera las consecuencias de sus actos.
Al amparo de todo lo antes expresado, concluimos que la destitución del Sr. Rodríguez estuvo justificada, por lo que actuó incorrectamente JASAP al dejarla sin efecto. Además, incidió al ordenar al CEM que aceptara la carta de renuncia del Sr. Rodríguez. Procede, por ello, la revocación de la Resolución recurrida.
IV
Por los fundamentos antes expresados, se revoca la Resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal el 22 de octubre de 2003 y notificada el 31 del mismo mes y año.
Lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
*1050 ESCOLIOS 2005 DTA 44
1. Apéndice del recurso KLRA-03-00914, pág. 18. La muestra fue numerada 99-26-402. Véase Apéndice del recurso KLRA-03-00924, pág. 39.
2. Artículo 11(A)(3)(d).
3. Apéndice del recurso KLRA-03-00914, pág. 19. Véase transcripción de la vista, apéndice del recurso KLRA-Q3-00924, págs. 59-60.
4. Apéndice del recurso KLRA-03-00914, pág. 33.
5. Apéndice del recurso KLRA-03-00914, págs. 30-31.
6. Apéndice del recurso KLRA-03-00914, pág. 29.
7. Apéndice del recurso KLRA-03-00914, pág. 32.
8. Dicho artículo expresa lo siguiente: “La negativa de cualquier candidato o empleado a someterse a dicha prueba, o un resultado positivo así certificado por el laboratorio en cuestión, serán causas suficientes para denegar el empleo, expulsarlo o destituirlo, según sea el caso.”
9. Apéndice del recurso KLRA-03-00914, págs. 36-42.
10. El artículo 11(A)(3)(d) indica que el monitor se asegurará de que se cumpla con lo siguiente:

“[q]ue la muestra para urinálisis en el Instituto no será menor de 60 mililitros y que la cinta adhesiva de seguridad esté debidamente iniciada. ”

11. Apéndice del recurso KLRA-03-00914, págs. 43-51.
12. Sostiene que los peritos concluyeron en la vista administrativa que la prueba se puede realizar con un mínimo de treinta (30) mililitros.
13. Apéndice del recurso KLRA-03-00914, págs. 14-16.
14. Entre dichos trámites, hubo una moción de reconsideración, presentada por el Sr. Rodríguez, que fue declarada no ha lugar el 20 de noviembre de 2003, notificada el 24 de noviembre del mismo año. Apéndice del recurso KLRA-03-00924, págs. 24-28.
15. Artículo 11(A)(4)(a) del Reglamento 5817.
16. En cuanto al cumplimiento de los reglamentos administrativos, una agencia viene obligada a “observarlos estrictamente y no queda a su soberana voluntad reconocer o no los derechos que ella misma le ha extendido a sus empleados. ” García Cabán v. U.P.R., 120 D.P.R. 167 (1987); Díaz de Llovet v. Gobernador, 112 D.P.R. 747, 757 (1982); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53 (1978); Hernández García v. J.R.T., 94 D.P.R. 22, 29 (1967).
17. Art. 3, Ley Núm. 78 de 14 de agosto de 1997. 3 L.P.R.A. § 2501.
18. 3L.P.R.A. § 2501.
19. Reglamento 5817.
20. Art. 11(A)(2)(e), Reglamento 5817.
*1051 21. Art. 11(A)(3)(d), Reglamento 5817.
22. Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. § 1301 y ss.
23. Reglamento 6165 de 14 de junio de 2000.
24. En el caso de autos, ambas partes han aceptado la legalidad del registro (la prueba de drogas) realizado al Sr. Rodríguez y la validez en derecho de un despido por un primer resultado positivo cuando la posición es sensitiva.
25. Art. 11(A)(4)(a), Reglamento 5817.
26. Apéndice del recurso KLRA-03-00924, págs. 44, 50 y 56. Véase además U.S v. Strozier, 31 M.J. 283 (1990); United States v. Pollard, 27 M.J. 376 (1989).
27. Brunet Justiniano v. Hernández Colón, supra, a la pág. 248; Candelario Muñiz v. Tribunal Superior, supra, a la pág. 30.
28. See. 8.6 Reglamento 6165.