El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
En esta ocasión debemos examinar ciertos planteamien-tos incoados al amparo del debido proceso de ley, los regla-mentos de personal de la Rama Judicial y el principio cons-titucional de “igual paga por igual trabajo”. En concreto, habremos de resolver si la Oficina de Administración de Tribunales (OAT) violó las disposiciones legales indicadas al reducir los sueldos de un grupo de secretarias de la Rama Judicial en aras de corregir un supuesto error admi-nistrativo cometido al implantar el Plan de Clasificación y Retribución de la Rama Judicial de 1998.
Teniendo presente la controversia señalada, pasemos a exponer el marco fáctico que origina estos recursos consolidados.
*323 1 — 1
A. CC-2010-0620(1)
Entre junio y noviembre de 1998, un grupo de secreta-rias auxiliares de la Rama Judicial fueron ascendidas al puesto de secretarias de servicios de sala (secretarias ascendidas). Como resultado de estos ascensos, las secreta-rias ascendidas se beneficiaron de la aplicación del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal de la Rama Judicial (Reglamento de la Admi-nistración del Sistema de Personal). 4 LPRAAp. XIII (ed. 1994). El texto de este articulado, según estaba reglamen-tado al momento de conferirse los ascensos,(2) permitió que el salario asignado a las secretarias ascendidas en su nueva escala retributiva reflejara el número de pasos(3) que adquirieron en su pasada escala salarial, y no solo el salario más alto devengado por estas bajo su antiguo puesto. De tal manera, las secretarias ascendidas recibie-ron un sueldo que sobrepasaba el tipo mínimo de su nueva escala salarial, en función al número de pasos que alcan-zaron en su antigua escala retributiva y con independencia de cualquier otro criterio salarial.
Coetáneo a lo anterior, el 31 de agosto de 1998, la Rama *324 Judicial aprobó un Plan de Clasificación y Retribución (Plan), con efecto retroactivo al 1 de julio de 1998. Al im-plantarse el nuevo Plan y reajustarse los salarios de forma correspondiente, las secretarias ascendidas obtuvieron un salario mayor que aquel devengado por las secretarias de servicios de sala que habían desempeñado ese cargo desde mucho antes de implementarse el Plan o de otorgarse los ascensos en disputa (secretarias originales). Tal situación ocurrió debido a que las secretarias ascendidas se benefi-ciaron de la aplicación del Art. 10.4(b), supra, previo a la entrada en vigor del Plan. Las secretarias originales, por no ser objeto de un ascenso, no se beneficiaron del Art. 10.4(b), supra, antes de implantarse el Plan. Estas solo recibieron una asignación en la nueva escala retributiva diseñada para el puesto de secretarias de servicios de sala, que garantizó, como mínimo, un salario equivalente al sa-lario más alto que percibieron al amparo de la pasada es-cala retributiva.
Posterior a la implementación del Plan, esta Curia, me-diante una Resolución adoptada el 19 de marzo de 1999, enmendó el Art. 10.4(b) del Reglamento de la Administra-ción del Sistema de Personal, supra.(4) Véase la Resolución del Tribunal Supremo de Puerto Rico, Res. Núm. EP-99-01. Con la referida enmienda, se eliminó la posibilidad experi-mentada por las secretarias ascendidas, mediante la cual un empleado ascendido podía recibir un reconocimiento del número de pasos por años de servicio o por mérito que adquirió en su pasada escala salarial —y no solo el salario máximo adquirido por los pasos— al momento de fijarse su sueldo en su nueva escala salarial. No obstante el cambio *325 señalado, las secretarias originales continuaron recibiendo un salario inferior al de las secretarias ascendidas, a pesar que aquellas habían ocupado el puesto de secretarias de sala por mucho más tiempo que estas últimas. Ello, pues, las secretarias ascendidas continuaron beneficiándose del texto del Art. 10.4(b), supra, según este estaba redactado antes de la enmienda explicada.
La perpetuación de esta diferencia en sueldo provocó que las secretarias originales acudieran ante la OAT para solicitar que sus sueldos fuesen equiparados con el salario devengado por las secretarias ascendidas. Fundamentaron su reclamo en el argumento constitucional y reglamentario de igual paga por igual trabajo. Alegaron que era improce-dente en derecho que las secretarias ascendidas gozaran de mayor remuneración que las secretarias originales, a pesar que ambos grupos de secretarias ejercen las mismas funciones y responsabilidades. La Directora de la OAT (Directora) denegó la solicitud de las secretarias originales.
Ante la denegatoria de la Directora, las secretarias ori-ginales recurrieron en alzada ante la Junta de Personal de la Rama Judicial (Junta). Las querellas de las secretarias originales fueron adjudicadas por la Junta en una Resolu-ción con fecha de 14 de septiembre de 2004. En esencia, la Junta resolvió que los salarios de las secretarias originales debían ser equiparados con aquellos devengados por las secretarias ascendidas. Sostuvo su decisión en el principio de igual paga por igual trabajo incorporado en el Art. II, Sec. 16 de la Constitución de Puerto Rico, el Art. 10 del Reglamento de Administración de Personal, supra, y la po-lítica salarial del Plan. La OAT no solicitó la reconsidera-ción de la decisión de la Junta ni presentó un escrito de revisión administrativa ante el Tribunal de Apelaciones.
El 8 de octubre de 2004, la OAT pretendió dar cumpli-miento a lo ordenado en la Resolución de la Junta. Al así obrar, la OAT concedió a las secretarias originales aquellos pasos necesarios para que cada una recibiese un salario *326 proporcional al sueldo recibido por una de las secretarias ascendidas, el cual equivalía a una compensación de $1,841 mensuales. En respuesta a lo anterior, el 21 de octubre de 2004, las secretarias originales cursaron a la Junta una mo-ción titulada “Moción sobre cartas notificadas el 8 de octu-bre de 2004”, en la cual se oponían a la forma como la OAT implemento la Resolución de la Junta de 14 de septiembre de 2004. Esencialmente, las secretarias originales argüye-ron que la equiparación de sueldos realizada por la OAT estaba errada. Ante ello, solicitaron una vista evidenciaría para exponer cómo debía computarse.
Posteriormente, las secretarias originales presentaron varias mociones en las cuales argüían que equiparar los sueldos entre ambos grupos de secretarias exigía que se les reconociese a las secretarias originales el número total de pasos alcanzados por ellas antes de implantarse el Plan. Según las secretarias originales, equiparar los sueldos de todas las secretarias originales al de una de las secretarias ascendidas, no evita que muchas secretarias ascendidas continúen devengando sueldos superiores a un gran nú-mero de secretarias originales con mayor antigüedad en el puesto de secretarias de servicios de sala.
En vista de las mociones instadas, el 21 de octubre de 2005, la Junta otorgó la audiencia solicitada. La oficial examinadora que la presidió emitió un informe a la Junta, en el cual concluyó que procedía reconocerle a las secreta-rias originales los pasos por mérito y servicio que habían adquirido previo a la implantación del Plan, de la misma forma que las secretarias ascendidas se beneficiaron del reconocimiento de los pasos que habían adquirido en la escala salarial que les aplicaba previo a su ascenso. La oficial examinadora descansó su recomendación en el prin-cipio de igual paga por igual trabajo, según este fue inter-pretado en la Resolución de la Junta de 14 de septiembre de 2004.
*327 En el ínterin, y en un caso distinto al de autos, el 10 de abril de 2006, la OAT sometió ante la Junta una moción en cumplimiento de una orden, mediante la cual anunciaba que se proponía dejar sin efecto el aumento concedido a las secretarias ascendidas y a las secretarias originales, con el propósito de supuestamente corregir la desigualdad salarial que había dado génesis a la controversia que nos ocupa. Específicamente, la OAT planteó que dejaría sin efecto los aumentos salariales resultantes de “la aplicación de las disposiciones del Artículo 10.4 del Reglamento” de la Administración del Sistema de Personal, supra.(5) En respuesta a esta moción, el 31 de mayo de 2006, la Junta le concedió a las secretarias originales un término de diez días para que mostraran causa por la cual no debía dejarse sin efecto el informe y la recomendación de la oficial examinadora. Las secretarias originales no comparecieron en el término indicado.
Así las cosas, el 26 de junio de 2006, la Directora de la OAT le envió una misiva a cada una de las secretarias originales y ascendidas, mediante la cual les notificó que, efectivo el 1 de julio de 2006, se dejarían sin efecto los aumentos salariales que les fueron concedidos por la Junta mediante la Resolución de 14 de septiembre de 2004. La OAT se limitó a aseverar que, luego de un estudio reali-zado en el contexto de un proceso administrativo pendiente ante la Junta, tales aumentos eran improcedentes en Derecho. El 3 de julio de 2006, las secretarias originales acudieron ante la Junta e impugnaron la determinación de la OAT mediante un escrito titulado “Moción solicitando auxilio de jurisdicción”. Entre otros planteamientos, aseve-raron que la acción objetada representaba una violación a su derecho al debido proceso de ley, ya que nunca se les proveyó una vista previo a sufrir una reducción del salario conferido por la Resolución de la Junta de 14 de septiem-bre de 2004.
*328 El 20 de septiembre de 2006, la Junta resolvió las mo-ciones indicadas. En su Resolución, la Junta concluyó que la acción de la OAT era procedente en Derecho. Funda-mentó su decisión en su entendimiento de que la acción de la OAT constituía una corrección legítima de un alegado error administrativo. Según la Junta, el referido error ad-ministrativo se debió a la implementación del Plan sin la concurrente enmienda del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra, lo que entendió que creó una norma de ascenso incompatible con el Plan. Según la Junta, la enmienda del articulado trajo en 1999 una norma de ascenso afín al Plan y corrigió el alegado error administrativo. Por tal motivo, la Junta ra-zonó que la acción de la OAT de reducir todo aumento con-ferido al amparo del Art. 10.4(b) del Reglamento de la Ad-ministración del Sistema de Personal, supra, previo a su enmienda, constituye una rectificación del alegado error administrativo, el cual quitó la base fáctica que dio pie a la disparidad de sueldos entre las secretarias ascendidas y las originales. Además, la Junta aseveró que ese error no creó un estado de derecho que obligara a la OAT ni impi-diera su debida corrección.
Inconforme con la determinación de la Junta, y luego de varios trámites interlocutorios, el 16 de enero de 2007, las secretarias originales presentaron un recurso de revisión administrativa ante el Tribunal de Apelaciones. En esen-cia, volvieron a argüir que la reducción de sus salarios constituyó una lesión a su derecho a un debido proceso de ley, según este es protegido por la Constitución de Puerto Rico y la Constitución federal.
El 11 de mayo de 2007, la OAT presentó una moción de desestimación ante el foro apelativo intermedio. En esen-cia, esta impugnó la validez de la notificación del recurso de revisión administrativa, indicando que en el caso de autos las secretarias originales notificaron su escrito a la *329 OAT y a la Junta, mas no al licenciado que representaba a la OAT, argumentando así que su escrito no quedó perfec-cionado en el término provisto para ello por el Reglamento del Tribunal de Apelaciones. En respuesta, las secretarias originales presentaron un escrito en oposición, en el cual plantearon que cumplieron con la notificación indicada, ya que el abogado de la OAT, al asumir la representación legal de su cliente, informó como suya la dirección de la OAT y nunca presentó una moción para un cambio de dirección.
Así las cosas, el 23 de julio de 2007, la OAT presentó su oposición al recurso administrativo de las secretarias originales. En esta, la OAT, entre otros argumentos, planteó que las secretarias originales no sufrieron una violación de su derecho al debido proceso de ley. Ello, pues no tenían derecho a una vista previo a la Resolución que redujo sus aumentos salariales y, de tenerlo, nunca la solicitaron. Se-gún la OAT, esta salvaguardó el derecho de las secretarias originales a un debido proceso de ley al notificarle de su derecho a apelar su decisión ante la Junta, lo cual las secre-tarias hicieron. Además, argüyó que la Junta hizo lo propio al ordenar a las secretarias ascendidas el 31 de mayo de 2006, a que mostraran causa por la cual no debía dejarse sin efecto la Resolución de 14 de septiembre de 2004. Asimismo, argumentaron que el proceso administrativo celebrado ante la Junta les otorgó a las secretarias originales una oportu-nidad justa y equitativa a ser oídas y a expresarse.
Finalmente, la OAT alegó que su acción sólo corrigió un error administrativo provocado por la omisión de enmen-dar el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra, antes de implantar el Plan. Según la OAT, el error indicado no generó un interés pro-pietario a favor de las secretarias originales y nada impe-día corregirlo. Descansando en estas y otras alegaciones, sostuvo que no tenían reclamo alguno al amparo de la pro-tección constitucional a un debido proceso de ley.
*330 El 22 de diciembre de 2009, el Tribunal de Apelaciones emitió una Sentencia en la que dispuso del recurso pre-sentado por las secretarias originales. En su dictamen, el foro apelativo intermedio concluyó que las secretarias ori-ginales tenían un interés propietario respecto a los au-mentos que le fueron conferidos por virtud de la Resolu-ción de la Junta de 14 de septiembre de 2004. Ante ello, determinó que la Junta estaba obligada a conferirle una audiencia previo a haber ordenado que los aumentos que gozaban les fuesen quitados. Además, ordenó a la Junta a analizar si la OAT, en efecto, había cometido un error de derecho o un error de hecho al momento de implantar el Plan sin haber enmendado concurrentemente el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra. El tribunal a quo no atendió la moción de desestimación presentada por la OAT.
Inconformes con el dictamen del Tribunal de Apelacio-nes, el 16 de julio de 2010, la OAT compareció ante nos mediante una petición de certiorari. En su recurso, la OAT le imputa al foro apelativo intermedio haber errado al: (1) no desestimar la causa de acción de las secretarias originales, según la OAT lo solicitó en su moción de 11 de mayo de 2007; (2) determinar que la Junta violó el dere-cho a un debido proceso de ley de las secretarias origina-les al no celebrar una audiencia para determinar si, en efecto, la OAT cometió o no un error administrativo; (3) resolver que las secretarias originales tienen un interés propietario respecto a los aumentos salariales en contro-versia, y (4) disponer que la OAT estaba impedida de co-rregir el supuesto error administrativo sin que la Junta determinara antes si el referido error era de hecho o derecho.
*331 B. CC-2008-1128(6)
Por otra parte, el 12 de julio de 2006, las secretarias aseendidas(7) presentaron una querella ante la Junta. Ello, en respuesta a la carta suscrita por la OAT el 26 de junio de 2006, en la cual se les notificó que sus sueldos serían reducidos, argumentando que se había cometido un error administrativo al implantar el Plan sin la concurrente en-mienda del Art. 10.4(b) del Reglamento de la Administra-ción del Sistema de Personal, supra. Esencialmente, y al igual que las secretarias originales, las secretarias ascendidas alegaron que la determinación de la OAT violó su derecho al debido proceso de ley, al menoscabar su interés propietario sobre los ascensos en disputa. Además, argüye-ron que el ascenso que les fue conferido al amparo del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra, le correspondía por ser este el estado de Derecho que existía al momento de implantarse el Plan. Ante ello, plantearon que la OAT violó los propios regla-mentos de personal de la Rama Judicial. Esta querella fue consolidada con otras que fueron presentadas por las se-cretarias originales el 6 de junio de 2006, en las cuales impugnaban, nuevamente, la decisión de la OAT.
El 28 de agosto de 2007, la OAT presentó una moción de desestimación sumaria contra las referidas querellas. En su moción, la OAT solicitó que, según la Resolución de la *332 Junta de 20 de septiembre de 2006, la Junta desestimara las querellas de las secretarias ascendidas y originales (colectivamente, secretarias), a raíz de que la OAT tenía po-testad para corregir el error administrativo en contro-versia. Argüyó que la Resolución de 20 de septiembre de 2006 impedía el reclamo de las secretarias, a la luz de la doctrina de impedimento colateral por sentencia. Además, fundamentó su reclamo en una Sentencia emitida por el Tribunal de Apelaciones en un caso idéntico en su natura-leza,(8) en el cual el foro apelativo intermedio concluyó que la OAT actuó propiamente al corregir el alegado error administrativo. El 18 de diciembre de 2007, las secretarias se opusieron a la moción de la OAT.
Con la comparecencia de ambas partes, el 20 de febrero de 2008, la Junta emitió una Resolución. En esta dispuso que los planteamientos argumentados por las secretarias originales en sus segundas querellas fueron adjudicados en su Resolución de 20 de septiembre de 2006. Ante ello, de-terminó que estas segundas querellas no procedían a base de la doctrina de impedimento colateral por sentencia. Res-pecto a las secretarias ascendidas, la Junta concluyó que estas no poseían un interés propietario sobre los aumentos en controversia, ya que estos habían sido conferidos por un error administrativo cometido por la OAT al momento de implantar el Plan, el cual no creó un estado de derecho que obligara a la agencia ni impidiera su corrección. Para fun-damentar su decisión, la Junta citó la decisión del Tribunal a quo esgrimida por la OAT en su moción de desestimación sumaria.
Inconforme con el dictamen administrativo, el 24 de marzo de 2008, las secretarias presentaron un recurso de revisión administrativa ante el Tribunal de Apelaciones. En su recurso, estas le imputaron a la Junta haber errado por, entre otras cosas: (1) no concluir que el Art. 10.4(b) del *333 Reglamento, supra, previo a ser enmendado en marzo de 1999, constituía el estado de Derecho al momento de otorgarse los aumentos en controversia, creando así un interés propietario exigible por las secretarias y oponible ante la OAT, y (2) no celebrar una vista evidenciaría para dilucidar los méritos de las querellas presentadas por las secre-tarias, violando así su derecho a un debido proceso de ley, previo a despojarles de los aumentos en disputa.
El 6 de mayo de 2008, la OAT se opuso al recurso de revisión administrativa instado por las secretarias. En su oposición, la OAT argüyó que las secretarias ascendidas no tenían un derecho a una vista evidenciaría, previo a la pri-vación de los aumentos que gozaban, ya que esos aumentos fueron conferidos por error administrativo, el cual no creó un interés propietario ni impedía su corrección. Así, argu-mentó que las secretarias no sufrieron una violación de su derecho a un debido proceso de ley, sino que, al contrario, la Junta y la OAT le otorgaron suficientes oportunidades para ser escuchadas.
Habida cuenta de las posiciones de ambas partes, el 20 de noviembre de 2008, el Tribunal a quo emitió su dictamen. En lo pertinente, el Tribunal de Apelaciones re-solvió que la Junta debió de haber celebrado una vista para dilucidar si los aumentos percibidos por las secretarias as-cendidas fueron producto de un error de hecho o uno de derecho. Respecto al reclamo de las secretarias originales, el Tribunal a quo determinó que estaba pendiente ante otro panel del Tribunal de Apelaciones y que no sería ad-judicado en esta sentencia. Cónsono con lo anterior, el foro apelativo intermedio revocó la decisión de la Junta en cuanto a su desestimación de las querellas de las secreta-rias ascendidas y devolvió el caso a esta para que celebrara una vista.
Inconforme con la determinación del Tribunal de Apela-ciones, el 23 de diciembre de 2008, la OAT acudió ante nos mediante un recurso de certiorari. En su recurso, la OAT *334 alega que el foro apelativo intermedio erró al resolver que la Junta debió de celebrar una vista para determinar si el aumento percibido por las secretarias ascendidas fue pro-ducto de un error de hecho o de derecho, antes de desesti-mar las querellas.
Luego de consolidar el caso ante nos con el pleito instado por las secretarias originales (CC-2010-0620), el 30 de junio de 2009 expedimos los autos solicitados. Contando con la comparecencia de todas las partes, pasamos a exponer el marco jurídico aplicable a los casos que nos ocupan y a ad-judicar las controversias correspondientes, según lo dicta el Derecho.
II
 Los casos ante nuestra consideración han generado múltiples argumentos de carácter procesal, los cuales han sido adjudicados a lo largo del tracto judicial. Solo resta atender un último planteamiento preliminar argumentado por la OAT, cuya disposición es imprescindible previo a con-siderar cualquier otro argumento en sus méritos. Concreta-mente, nos toca dirimir si el Tribunal de Apelaciones erró al no desestimar el recurso de revisión administrativa de las secretarias originales por estas alegadamente no haber no-tificado su recurso al abogado de la OAT. Veamos.
A. La notificación adecuada y oportuna del recurso de revisión administrativa al abogado de la OAT
La Regla 58(B)(1) del Reglamento del Tribunal de Ape-laciones, provee lo siguiente:
La parte recurrente notificará el escrito de revisión debida-mente sellado con la fecha y hora de su presentación a los abo-gados(as) de récord del trámite administrativo o, en su defecto, a las partes, así como a la agencia o al funcionario (a) adminis-trativo (a) de cuyo dictamen se recurre, dentro del término para presentar el recurso, siendo éste un término de cumplimiento estricto. 4 LPRA Ap. XXII-B.
*335 De la citada provisión legal, encontramos que existe un mandato reglamentario a que toda parte que interese pre-sentar un recurso de revisión administrativa ante el Tribunal de Apelaciones, notifique este al abogado “de récord”, en el término provisto en ley para ello. En su defecto, la parte recurrente puede notificar su recurso a las partes representadas por el abogado “de récord”. El requisito de notificar al abogado de la parte contraria es de cumpli-miento estricto y no de carácter jurisdiccional.
Según lo hemos expresado en el pasado, este mandato reglamentario, al igual que los restantes requisitos del Reglamento del Tribunal de Apelaciones, “deben observarse rigurosamente”. Arriaga v. F.S.E., 145 DPR 122, 130 (1998). Véase, también, García Ramis v. Serrallés, 171 DPR 250, 253 (2007). Ello se debe a que “no puede quedar ‘al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo’ ”. Id., citando a Matos v. Metropolitan Marble Corp., 104 DPR 122, 125 (1975).
En los casos ante nos, encontramos que las secretarias originales, al presentar su recurso de revisión administra-tiva ante el Tribunal de Apelaciones, cumplieron con la Re-gla 58(B)(1) del Reglamento del foro apelativo intermedio. Al examinar el expediente del caso, encontramos que el abogado de la OAT —el Ledo. Luis R. Rivera Martínez— al presentar su moción asumiendo la representación legal de la OAT, informó que su dirección postal era la misma direc-ción que la de su cliente.(9) Fue precisamente a esta direc-ción postal —la de la OAT— que las secretarias originales notificaron su recurso administrativo. Ante ello, no encon-tramos violación alguna al requisito procesal señalado. Con-secuentemente, el recurso de revisión administrativa de las secretarias originales quedó debidamente perfeccionado y no cabe hablar de su desestimación.
*336 Teniendo presente que no existe escollo procesal alguno que nos impida examinar los méritos de los planteamien-tos argumentados por las partes, pasemos a examinar el marco jurídico aplicable a los reclamos salariales incoados por las secretarias. De cara a ese esfuerzo, reconocemos que las partes han erguido su pedido al amparo del dere-cho constitucional al debido proceso de ley. No obstante, entendemos que la controversia ante nuestra consideración puede adjudicarse mediante la interpretación de los reglamentos de personal de la Rama Judicial, sin necesidad alguna de entrar en consideraciones de carácter constitucional, más allá de lo necesario. Véanse: Asociación Maestros v. Comisión, 159 DPR 81, 85 esc. 1 (2003); ELA v. Aguayo, 80 DPR 552 (1958).
Con ello en mente, y según lo expusimos, enfocaremos nuestra mirada en determinar si las secretarias poseen un derecho reglamentario a cobrar el beneficio económico deri-vado de los pasos o tipos intermedios que alcanzaron en su antigua escala salarial, previo a la implantación del Plan de 1998. Por un lado, las secretarias ascendidas erigen su re-clamo a la luz del Art. 10.4(b) del Reglamento de la Admi-nistración del Sistema de Personal, supra. Por otra parte, las secretarias originales hacen lo propio descansando en el principio general de igual paga por igual trabajo que articu-lan los reglamentos de personal de la Rama Judicial. Ante ello, procedemos a discutir algunos aspectos generales de la estructura normativa de personal que impera en la Rama Judicial para poder atender los reclamos de las secretarias.
III
A. El sistema de personal de la Rama Judicial
La Sec. 7 del Art. V de la Constitución de Puerto Rico establece que “[e]l Tribunal Supremo adoptará reglas para la administración de los tribunales las que estarán sujetas *337 a las leyes relativas a [...] personal [...], y a otras leyes aplicables en general al gobierno”. (Énfasis nuestro). Art. V, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 416. A su vez, la Asamblea Legislativa promulgó la Ley Núm. 64 de 31 de mayo de 1973 (4 LPRA see. 521 et seq.), conocida como la Ley de Personal de la Rama Judicial, con el propó-sito de facultar a la Rama Judicial para que adopte reglas que rijan la administración de su personal y para crear un sistema de personal autónomo que responda a sus necesidades.
Al amparo de los referidos estatutos, el 30 de junio de 1974, esta Curia adoptó las Reglas del Sistema de Personal de la Rama Judicial, 4 LPRAAp. XII (Reglas del Sistema de Personal). Estas reglas fueron promulgadas con el fin de regir efectivamente la administración y el funcionamiento del sistema de personal de la Rama Judicial, “basado en el principio del mérito, excelencia e idoneidad y sin discrimen de clase alguna”. Preámbulo, Reglas del Sistema de Personal, supra.
Posteriormente, el 30 de agosto de 1974, aprobamos el Reglamento de la Administración del Sistema de Personal, 4 LPRAAp. XIII. Según lo expusimos en el Art. 1 de la citada disposición legal, este reglamento aplica a to-dos los puestos en la Rama Judicial, siempre y cuando sus disposiciones no contravengan a las Reglas del Sistema de Personal. Art. 1 (4 LPRA Ap. XIII). De tal manera, el Reglamento de la Administración del Sistema de Personal quedó supeditado a las Reglas del Sistema de Personal.
Teniendo presente la estructura normativa del sistema autónomo de personal de la Rama Judicial, pasemos a ana-lizar las disposiciones que inciden sobre la retribución que se ha de otorgar a un empleado ascendido, en aras de iden-tificar si las secretarias ascendidas poseen algún derecho a cobrar el beneficio económico derivado del reconocimiento de los pasos o tipos intermedios que adquirieron al amparo de su antigua escala salarial, previo a ser ascendidas. Pos- *338 teriormente, haremos lo propio con los reclamos homólogos instados por las secretarias originales.
IV
A. La normativa relativa a la compensación de un em-pleado ascendido
En la Rama Judicial la retribución conferida a un em-pleado por motivo de un ascenso está sujeta al Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra. Este articulado ha experimentado cambios significativos coetáneos al desarrollo de los hechos en controversia.
Previo a la implantación del Plan, el Art. 10.4(b), supra, disponía lo siguiente:
También recibirán una retribución sobre el mínimo los funcio-narios y empleados que sean ascendidos, aumentándose el mismo número de pasos que sobre el mínimo de la escala anterior tuvieran. (Énfasis nuestro). 4 LPRAAp. XIII (ed. 1994).
De tal manera, el Art. 10.4(b), supra, antes de implan-tarse el Plan, permitía que un empleado ascendido pudiese beneficiarse del número de pasos obtenidos en su antigua escala salarial, traspasándolos a su nueva escala salarial. Al así requerirlo, esta disposición legal iba más allá de exi-gir que se reconociese el monto del salario más alto alcan-zado en la pasada escala salarial, permitiendo que el em-pleado ascendido se beneficiara del número de pasos adquiridos en ella, los cuales en la nueva escala salarial siempre equivaldrían a un sueldo mayor a aquel que obte-nía el empleado con el mismo número de pasos en su anti-gua escala salarial.
El 19 de marzo de 1999, a siete meses de instituirse el Plan, este Foro aprobó una Resolución para enmendar el Art. 10.4(b), supra. Véase Resolución del Tribu *339 nal Supremo de Puerto Rico Núm. EP-99-01. Esta enmienda alteró el texto del articulado indicado de la ma-nera siguiente:
Todo empleado que ascienda percibirá retribución al tipo mí-nimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajus-tará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiera recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio. 4 LPRA Ap. XIII, R. 10.4(b).
Como resultado de lo anterior, el Art. 10.4(b), supra, ahora provee para que, luego de un ascenso, un empleado reciba una retribución inicial que sea correspondiente al tipo mínimo de esa nueva escala salarial. Cuando el salario devengado al amparo de su antigua escala salarial resulta superior a este tipo mínimo, entonces procede ajustarle el salario concediéndole el paso o tipo intermedio que sea in-mediatamente superior al equivalente del salario más alto que devengó bajo la pasada escala salarial. A diferencia del texto del Art. 10.4(b), supra, antes de enmendarse, el texto reformado solo reconoce que, en caso de ascenso, el em-pleado continuará recibiendo, como mínimo, el salario más alto que devengó según su antigua escala salarial. Así, el lenguaje de esta enmienda, a diferencia del texto anterior, no reconoce los pasos adquiridos por la pasada escala salarial.
Ahora bien, los casos ante nos exigen examinar si esa enmienda reglamentaria tuvo efectos retroactivos que afec-tasen los aumentos salariales recibidos por las secretarias ascendidas al amparo del Art. 10.4(b), supra, previo a ser enmendado. Ello con el fin de constatar si las secretarias ascendidas tienen un derecho a continuar devengando los aumentos recibidos antes de la enmienda en contención. *340 Ante esta necesidad, discutamos brevemente las normas re-ferentes al principio de retroactividad.
B. El principio de retroactividad y la Resolución Núm. EP-99-01 del Tribunal Supremo de Puerto Rico
Según lo dispone el Art. 3 del Código Civil de Puerto Rico, las leyes no tendrán efecto retroactivo, a no ser que expresamente se provea lo contrario. 31 LPRA see. 3. Aun cuando una ley tenga efecto retroactivo por disposición expresa a esos efectos, esta no podrá “perjudicar los derechos adquiridos al amparo de una legislación anterior”. Id.
En iguales términos, hemos reconocido que una ley podrá tener efectos retroactivos cuando surja de la intención legislativa, ya sea de forma expresa o tácita, el deseo del legislador de brindarle tal efecto. Clases A, B y C v. PRTC, 183 DPR 666, 679 (2011); Asoc. Maestros v. Depto. Educación, 171 DPR 640, 648-649 (2007). “Ahora bien, ello no significa que podamos impartirle retroactividad a una ley a la ligera. La intención del legislador de darle efecto retroactivo a una ley debe desprenderse del estatuto. [...] [L]a retroactividad, por ser un acto excepcional, debe aparecer expresamente o surgir claramente del estatuto”. (Enfasis suprimido). Id., pág. 649. Es por ello que hemos pautado que, “ante la omisión de un mandato expreso del legislador, solamente procede impartirle efecto retroactivo a una ley cuando es obvio y patente el propósito legislativo en casos en los cuales la aplicación retroactiva es necesaria para corregir un grave mal social y así poder hacer justicia”. Torres Rodríguez v. Carrasquillo Nieves, 177 DPR 728, 758 (2009).
Este principio de la irretroactividad de las leyes, consagrado en el Art. 3 del Código Civil, supra, no se limita a los estatutos promulgados por la Asamblea Legislativa. Según lo hemos establecido, el principio de la irretroactividad de las leyes se extiende a la aplicación de los reglamentos administrativos y sus correspondientes enmiendas. Torres Rodrí guez v. Carrasquillo Nieves, supra, pág. 758.
*341 En el caso de autos, resulta imperativo preguntarnos si la Resolución Núm. EP-99-01 de este Tribunal, promulgada el 19 de marzo de 1999, enmendó el Art. 10.4(b), supra, con la intención de otorgarle un efecto retroactivo. Al examinar la referida Resolución, encontramos que esta, además de proveer el nuevo texto del Art. 10.4(b), supra, se limita a aseverar que la Resolución tendrá vigencia inmediata.(10) Resolución Núm. EP-99-01, pág. 2. Nada se dice sobre la retroactividad de la enmienda a los ascensos otorgados antes de 19 de marzo de 1999. De igual forma, la OAT, en un memorando circulado a todo el personal de la Rama Judicial, con el fin de explicar la enmienda en controversia, se circunscribió a afirmar que la Resolución bajo examen tendría “vigencia inmediata”. Véase Memorando Núm. 273, Leda. Mercedes Bauermeister, Directora Administrativa de los Tribunales, Enmienda a los Artículos 9.3(a) y (b), 10.4(b) del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, 31 de marzo de 1999, pág. 2, Caso Núm. CC-2008-1128, pág. 102. Nuevamente, hay silencio respecto a la retroactividad del Art. 10.4(b), supra, según fue enmendado.
Nuestros pronunciamientos jurisprudenciales ya han establecido que cuando un estatuto o un reglamento “[s]e limita sólo a ordenar su vigencia inmediata, sin ex- *342 presión alguna que indique textualmente o de algún otro modo claro que la nueva disposición sería de aplicación re-troactiva”, corresponde determinar que la disposición legal bajo examen no fue promulgada con el fin de que tuviese efecto retroactivo alguno. Nieves Cruz v. U.P.R., 151 DPR 150, 160 (2000). Véase, también, Asoc. Maestros v. Depto. Educación, supra, pág. 650.
A la luz de lo anterior, y en vista de que la Resolución Núm. EP-99-01 no ordena su aplicación retroactiva de modo expreso, ni ello surge de modo claro alguno de esa Resolución, procede resolver que la enmienda al Art. 10.4(b), supra, solo aplica prospectivamente a aquellos as-censos que fueron conferidos luego de 19 de marzo de 1999, fecha de efectividad de la Resolución bajo examen. Conse-cuentemente, todo ascenso conferido antes del 19 de marzo de 1999, quedará sujeto al texto del Art. 10.4(b), supra, antes de este quedar enmendado por la Resolución Núm. EP-99-01.
A la luz de lo anterior, pasemos a examinar si las secre-tarias ascendidas antes de 19 de marzo de 1999, poseen un derecho a recibir un salario en su nueva escala salarial que reconozca el beneficio económico que derivaron del número de pasos o tipos intermedios que le fueron otorgados en su antigua escala salarial.
C. El derecho reglamentario de las secretarias ascendidas a que su salario refleje el número de pasos o tipos interme-dios alcanzados en su antigua escala salarial.
En el caso de autos, las secretarias ascendidas arguyen que poseen un derecho a cobrar el beneficio económico de-rivado de los pasos o tipos intermedios que alcanzaron antes de implantarse el Plan, producto de los ascensos que recibieron al amparo del Art. 10.4(b), supra, antes de éste ser enmendado. Les asiste la razón.
Los ascensos conferidos a las secretarias ascendidas quedaron sujetos al texto del Art. 10.4(b), supra, antes de *343 este ser enmendado por la Resolución Núm. EP-99-01. Como resultado, la OAT actuó correctamente cuando, pre-vio a implantar el Plan, le reconoció a las secretarias as-cendidas los pasos o tipos intermedios que habían alcan-zado con su antigua escala salarial. Ello es así debido a que el estado de derecho al momento de otorgarse los ascensos de las secretarias ascendidas —entiéndase, el Art. 10.4(b), supra, antes de 19 de marzo de 1999— así lo exigía.
Como tal, la OAT estaba obligada a respetar el Reglamento de la Administración del Sistema de Personal. Ello, pues es norma reiterada que el Estado está obligado “a observar estrictamente las reglas que [...] promulg[ue]”. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 81 (1999), citando a García Cabán v. U.P.R., 120 DPR 167, 175 (1987). Véanse, también: Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004); Montoto v. Lorie, 145 DPR 30, 47 (1998); Díaz Llovet v. Gobernador, 112 DPR 747 (1983); García v. Adm. del Derecho al Trabajo, 108 DPR 53 (1978). A esos efectos, “[u]na vez se ha adoptado una norma, [el Estado] debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron”. T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 81.
Según lo hemos interpretado en el pasado, la Rama Judicial no está exenta de cumplir con este principio rector. Véase In re Hernández Torres, 164 DPR 180, 192 (2005) (“Es principio reiterado de derecho administrativo que cuando una agencia promulga un reglamento, por impera-tivo del debido proceso de ley, está obligada a seguirlo y no queda a su arbitrio reconocer o no los derechos que se es-tablecen en éste”).
En lo que concierne a las secretarias ascendidas, el citado Art. 10.4(b), antes de ser enmendado, continuó siendo el estado de derecho operante, aun después de implementarse el Plan en agosto de 1998. Lo anterior se debe a que, cuando examinamos la normativa aplicable, encontramos *344 que el referido articulado no es incompatible con el Plan y puede coexistir junto a este.(11) Consecuentemente, la apli-cación retroactiva del Plan a los ascensos provistos antes de agosto de 1998 no afectó el reconocimiento de los pasos adquiridos por las secretarias ascendidas cuando se des-empeñaban como secretarias auxiliares, una vez fueron promovidas al puesto de secretarias de servicios de sala.
No fue sino hasta el 19 de marzo de 1999 que se en-mendó el Art. 10.4(b), supra. Debido a que la Resolución que facultó esta enmienda no dispuso expresamente su re-troactividad, las secretarias ascendidas no quedaron suje-tas al texto del Art. 10.4(b), supra, según este fue enmen-dado en 1999. Como tal, hasta la fecha, esos ascensos deben ser examinados a la luz del texto del articulado, se-gún este quedó configurado antes de emitirse la Resolución Núm. EP-99-01.
Cuando así procedemos, encontramos que las secreta-rias ascendidas tienen un derecho reglamentario a que se les reconozca en la escala salarial a la cual fueron ascendi-das antes de implantarse el Plan, todos los pasos que ha-bían alcanzado en su pasada escala salarial. En otras pa-labras, el Art. 10.4(b), supra, antes de ser enmendado en 1999, les reconoce a las secretarias ascendidas un derecho concreto a reclamar en su nueva escala salarial los pasos —y no solo los salarios máximos— que alcanzaron en su antigua escala salarial.
*345 D. El error administrativo
Ahora bien, la OAT arguye que las secretarias ascendi-das no poseen un derecho a los pasos que les fueron reco-nocidos en su nueva escala salarial. Para ello, razona que la implantación del Plan sin la debida enmienda al Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra, constituyó un mero error administra-tivo, el cual no crea derecho alguno ni impide la corrección. No le asiste la razón.
Hemos sido consecuentes en aseverar que, como norma general, un error administrativo no crea un estado de derecho que obligue a un cuerpo administrativo ni impida su corrección. González v. ELA, 167 DPR 400, 413 (2006); Santiago v. Depto. de la Familia, 153 DPR 208, 218 (2001); Magriz v. Empresas Nativas, 143 DPR 63, 71 (1997); Franco v. Municipio de Cidra, 113 DPR 260, 262 (1982). Sin embargo, es preciso tener presente que esta norma no aplica de forma automática ante su mera invocación. Más bien, y según lo hemos intimado en el pasado, esta doctrina solo aplica cuando la agencia actúe de forma incorrecta, ilegal o ultra vires. Véanse: Camacho Torres v. AAFET, 168 DPR 66, 95 (2006); González v. ELA, supra, págs. 417-418; Magriz v. Empresas Nativas, supra, pág. 71. En apoyo a lo anterior, es meritorio examinar brevemente diferentes circunstancias en las cuales hemos encontrado que determinado cuerpo administrativo incurrió en un error compatible con la doctrina bajo análisis. Veamos.
Al amparo de la doctrina del error administrativo fue que en González v. ELA, supra, determinamos que unos confinados que recibieron libertad bajo supervisión electrónica, a pesar de que la Ley Núm. 49-1995 (4 LPRA sec. 1136 et seq.) expresamente los excluía de disfrutar el referido beneficio por haber sido convictos por el delito de asesinato, no podían reclamar un derecho a su excarcelación, ya que la agencia les había conferido estado libertario en contra de la ley. En *346 iguales términos, en Camacho Torres v. AAFET, supra, resolvimos que un empleado que fue reinstalado por su agen-cia en su antiguo puesto de carrera, luego de culminar su nombramiento de confianza, no podía reclamar un derecho a la reinstalación por esta constituir una concesión ultra vires para la cual la agencia no tenía autoridad en ley para otorgarla.
A su vez, en Infante v. Tribl. Examinador Médicos, 84 DPR 308 (1961), dispusimos que la admisión equivocada por la Junta de Médicos Examinadores de Puerto Rico del señor Infante a un examen de reválida, para ejercer la profesión de la medicina en Puerto Rico, cuando este no tenía un diploma de una escuela de medicina que cumpliese con los requisitos de acreditación exigidos por nuestro ordena-miento, no le otorgaba a este un acceso a futuros exámenes de reválida, ya que la Junta no tenía autoridad en ley para reconocer a su escuela de medicina como una entidad debi-damente acreditada que le confiriese la referida admisión.
Por otra parte, en ELA v. Rivera, 88 DPR 196, 198-199 (1963), indicamos que la concesión de un permiso ilegal no impedía su posterior corrección, por lo que ordenamos a una demandante a demoler una verja que había construido contra los reglamentos de la Junta de Planificación, pero por virtud del consejo y la autorización de un oficial de permisos de la referida agencia. Asimismo, en Del Rey v. J.A.C.L., 107 DPR 348 (1978), este Tribunal dispuso que la otrora Administración de Reglamentos y Permisos, a pesar de haber conferido a ciertos moteles unos permisos de uso que no procedían en derecho, había cometido un error administrativo, el cual no obligaba a la agencia a conferir un permiso análogo a un motel que ahora invocaba esos precedentes para recibir igual trato ilegal.
Según se deduce de la exposición que antecede, la cual constituye una muestra del universo amplio de casos que atienden la doctrina bajo examen, resulta forzoso *347 concluir que no cabe hablar de la corrección de un error administrativo y de sus consecuencias legales si no se es-tablece que la agencia en controversia ha procedido de forma contraria a nuestro ordenamiento legal. En otras pa-labras, la doctrina del error administrativo solo queda ac-tivada ante un acto anterior de la agencia que pueda ser caracterizado como ultra vires, incorrecto o ilegal.
Aplicando la normativa explicada al caso de autos, en-contramos que la OAT, al reconocer a las secretarias ascen-didas al momento de implantar el Plan de 1998 los pasos que habían adquirido en su antigua escala salarial, no ac-tuó de forma ultra vires, ilegal o incorrecta. Al contrario, y como hemos explicado, el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, supra, les garan-tiza los pasos en controversia. Además, esta garantía re-glamentaria es compatible con las leyes y los reglamentos restantes del sistema de personal de la Rama Judicial y es superior en jerarquía al Plan de 1998.
Como resultado de ello, en el caso de autos resulta in-necesario e impertinente aplicar la doctrina del error ad-ministrativo y sus consecuencias jurídicas.(12) Distinto hu-biese sido el caso si la OAT hubiese conferido un beneficio a las secretarias ascendidas, el cual no correspondía en Derecho. En tal supuesto sí correspondería hablar sobre un error administrativo y su justificada corrección.
*348 No obstante, ese no es el caso ante nos. Aquí la OAT reconoció a las secretarias ascendidas unos pasos alcanza-dos en su pasada escala retributiva, según lo exigía —y aún lo exige— el Reglamento de Administración del Sis-tema de Personal. Este proceder no era contrario al Derecho. Consecuentemente, no es correcto argumentar que la OAT incurrió en un error administrativo. Ante ello, resulta forzoso concluir que las secretarias ascendidas po-seen un derecho a que se les reconozca en su nueva escala salarial los pasos que alcanzaron al amparo de su antigua escala salarial, sin importar que posterior a su ascenso se implantara el Plan de 1998.
Teniendo presente lo anterior, debemos auscultar si las secretarias originales también pueden articular exitosa-mente un derecho reglamentario a devengar en su nueva escala salarial el beneficio económico derivado de los pasos o tipos intermedios que alcanzaron en su antigua escala salarial, antes de implantarse el Plan.
V
A. El derecho de las secretarias originales a devengar el beneficio económico derivado del reconocimiento de los ti-pos o pasos intermedios alcanzados en su antigua escala salarial
Las secretarias originales arguyen que poseen un dere-cho a cobrar en su nueva escala salarial el equivalente eco-nómico derivado del número de pasos que adquirieron antes de implantarse el Plan de Clasificación y Retribución de 1998. No les asiste la razón.
En el sistema autóctono de personal de la Rama Judicial, el Art. 9 del Reglamento de Administración del Sis-tema de Personal, supra, regula todo lo concerniente a los ajustes que habrán de efectuarse en la retribución del per *349 sonal de la Rama Judicial cuando se implante un nuevo plan de clasificación y retribución. En particular, el Art. 9.1 del referido Reglamento dispone acerca de los ajustes que habrán de realizarse en la retribución de los empleados incumbentes en los puestos existentes bajo las distintas clases del plan de clasificación y retribución de la Rama Judicial. Al momento de implantarse el Plan, el referido articulado proveía lo siguiente:
Al establecerse el Plan de Retribución, el sueldo a fijarse al incumbente de cada puesto se ajustará conforme a lo si-guiente:
a) El sueldo del incumbente que sea menor que el tipo mínimo fijado para la clase, será aumentado automáticamente hasta dicho tipo mínimo.
b) El sueldo del incumbente que corresponda al mínimo o [a] alguno de los tipos intermedios de la escala fijada para la clase a la cual se asigna su puesto permanecerá inalterado.
c) El sueldo del incumbente que quede dentro de la escala fijada, pero que no coincida con uno de los tipos intermedios, será ajustado al tipo que sigue inmediatamente.
d) El sueldo del empleado que sea mayor que el máximo de la escala correspondiente a su puesto permanecerá inalterado, a menos que una revisión ulterior aumente dicha escala. Art. 9.1, 4 LPRA Ap. XIII (ed. 1994).
Al examinar con detenimiento el Art. 9.1, supra, encontramos que nada en las leyes o en los reglamentos de la Rama Judicial les adjudica a las secretarias originales un derecho a reclamar que su nuevo salario sea ajustado, conforme a los pasos que alcanzaron en sus escalas salariales antes de implantarse el Plan. Al contrario, el articulado citado solo les reconoce un derecho a que, al implantarse el nuevo plan, se les adjudique un salario, como mínimo, igual al salario que devengaban al amparo de la escala salarial suplantada.
Una simple lectura del texto del Art. 9.1, supra, confirma lo anterior al establecer que al momento de implantarse el Plan de 1998, todo sueldo de un incumbente debía ser ele- *350 vado al tipo mínimo de la escala salarial aplicable a su puesto. Si el salario del empleado incumbente antes de im-plantarse el Plan era igual al tipo mínimo o a alguno de los tipos intermedios de la nueva escala salarial, entonces que-daba inalterado. Ahora bien, cuando el salario anterior era mayor que el nuevo tipo mínimo, pero no coincidía con uno de los nuevos tipos intermedios, entonces era ajustado al tipo intermedio siguiente superior, de forma tal que el em-pleado incumbente continuase ganando un salario igual o superior al salario suplantado. Finalmente, si el empleado devengaba un sueldo que era superior al tipo máximo de la nueva escala salarial, entonces este quedaba inalterado.
Aplicando la disposición reglamentaria analizada al caso de autos, encontramos que las empleadas originales no tienen un derecho a que se les reconozca en su nueva escala salarial el número de pasos que habían alcanzado bajo la escala salarial existente antes de implantarse el Plan de 1998. Al amparo del texto del Art. 9.1, supra, re-sulta forzoso concluir que las secretarias originales solo tenían derecho a que, al implantarse el Plan de 1998, se les reconociese en su nueva escala salarial una retribución igual o mayor al salario que devengaban bajo la escala sa-larial anterior; ello en función a las particularidades detalladas.
Distíngase lo anterior del caso de las secretarias ascen-didas, las cuales sí pueden descansar en una disposición reglamentaria —el Art. 10.4(b), supra, antes de ser enmen-dado en 1999— que les reconoce un derecho a que en caso de experimentar un ascenso, su nuevo sueldo fuese ajus-tado de tal manera que reflejara los pasos adquiridos por las secretarias ascendidas al amparo de su antigua escala salarial, sin importar que luego de los ascensos entrara en vigor el Plan de 1998.
En resumidas cuentas, y a la luz de todo lo anterior, no cabe hablar de un derecho reglamentario de las secretarias originales a que sus salarios posteriores bajo el Plan de *351 1998 integrasen el número de pasos alcanzados en su pa-sada escala salarial.
VI
Según lo discutido hasta el momento, queda establecido que las secretarias originales no pueden reclamar un dere-cho reglamentario al número de pasos que recibieron antes de implantarse el Plan de Clasificación y Retribución de 1998. Asimismo, las secretarias originales tampoco pueden articular semejante expectativa respecto al aumento sala-rial que la Junta les otorgó en aras de equiparar su salario al de las secretarias ascendidas.
Ahora bien, ello no priva a las secretarias originales de un remedio en Derecho. Habiendo resuelto que las secreta-rias ascendidas poseen un reclamo válido a los pasos en controversia, resta examinar si se debe equiparar el sueldo de las secretarias originales con aquel devengado por las secretarias ascendidas. Ello, al amparo del derecho consti-tucional y reglamentario a igual paga por igual trabajo.
Como antesala a nuestro análisis, resulta necesario exa-minar el derecho a igual paga por igual trabajo, según esta garantía es consagrada en los reglamentos de personal de la Rama Judicial y por nuestra Constitución, todo en el contexto de la normativa aplicable a los planes de clasifi-cación y retribución de esta rama de gobierno.
A. La normativa reglamentaria relativa al Plan de Clasi-ficación y Retribución y el principio de “igual paga por igual trabajo”
A lo largo y ancho de los Reglamentos de Personal de la Rama Judicial, permea el principio constitucional de igual paga por igual trabajo. Ello, con especial énfasis en las disposiciones relativas a la creación e implementación de los planes de clasificación y retribución de la Rama Judicial. Abundemos.
*352 La Regla 5 del Sistema de Personal, supra, ordena la creación de un Plan de Clasificación para la Rama Judicial. 4 LPRA Ap. XIII. Esta dispone que el Plan de Clasificación tendrá clases, que agruparán los puestos de trabajo con deberes y responsabilidades determinadas. Id. En la creación de estas clases, resulta imperativo que se agrupen “aquellos puestos con deberes sustancialmente similares en cuanto a responsabilidad, complejidad y autoridad dentro de la estructura funcional de la Rama Judicial y que para desempeñar los mismos se requieren requisitos análogos de preparación, experiencia, conocimientos, habilidad y la misma capacidad para la mejor ejecución de esos deberes”. íd. A su vez, el Plan de Clasificación debe procurar “que se puedan aplicar con equidad las mismas escalas de retribución a trabajos sustancialmente similares”. (Enfasis nuestro). íd.
El Art. 5.1 del Reglamento de Administración del Sistema de Personal, supra, complementa lo anterior al especificar que “[e]l principio constitucional de igual paga por igual trabajo sólo puede conseguirse si se analizan adecuadamente los deberes y responsabilidades de cada puesto”. (Énfasis nuestro). 4 LPRA Ap. XIII. Este articulado añade que, “[a] estos efectos, el Juez Presidente o la persona en quien él delegue, hará que se determinen los deberes y responsabilidades de todos los puestos en la Rama Judicial y los agrupará en forma sistemática dentro de clases que constituirán el Plan de Clasificación”. íd. Estas clases, a su vez, “proveerá[n] una base sólida para establecer y mantener un plan de retribución equitativo [...] y para proveer normas de cualificación para empleo y ascenso justas y uniformes”. (Énfasis nuestro). íd. En consecución de esos fines, el Plan de Clasificación tendrá “una especificación escrita para cada clase de puesto existente en la Rama Judicial, una tabla de niveles de responsabilidad que refleja el nivel, en términos de complejidad, res- *353 ponsabilidad, y otros elementos de clasificación de cada clase y la reglamentación para la efectiva implantación y administración del plan”. íd.
Por otra parte, la Regla 11 del Sistema de Personal, supra, complementa el Plan de Clasificación con la creación de un Plan de Retribución. En específico, la citada disposición legal provee lo siguiente:
El Juez Presidente establecerá un Plan de Retribución que cubra todos los puestos de la Rama Judicial [...] Mediante este Plan se fijarán las escalas de retribución en las cuales se asig-narán todas las clases de puestos incluidos en el Plan de Clasificación. Estas escalas de retribución consistirán de un tipo mínimo y un máximo y varios tipos intermedios a deter-minarse en forma justa y equitativa para el mejoramiento eco-nómico del personal. El personal de la Rama Judicial será re-tribuido conforme a lo establecido en el Plan de Retribución. (Énfasis nuestro). 4 LPRA Ap. XII.
El Reglamento de Administración del Sistema de Personal añade que el Plan de Retribución deberá estar “[a] cor de con el principio establecido de que los empleados deben recibir retribución justa que guarde proporción con los servicios que prestan [y] en plena armonía con el Plan de Clasificación y con el principio constitucional de igual paga por igual trabajo”. (Énfasis nuestro). Art. 10.1 (4 LPRA Ap. XIII). A su vez, estará compuesto de tres elementos fundamentales, a saber: (1) la estructura de todas las escalas de retribución que sean necesarias, las cuales tendrán un tipo mínimo, pasos intermedios y un tipo máximo de retribución; (2) una lista de asignaciones de clase a las de retribución correspondientes, y (3) las reglas necesarias para la implantación, la operación y el mantenimiento del Plan de Retribución. Art. 10.1(a), íd.
Fue al amparo de este andamiaje reglamentario que el entonces Juez Presidente, José Andréu García, aprobó el Plan de Clasificación y Retribución de 1998 (el Plan). Mediante este, se delinearon doce (12) escalas de sueldo enu *354 meradas consecutivamente, las cuales, en el conglomerado, contienen 118 clases de puestos. Véase el Informe Narra-tivo del Plan de Clasificación para el Servicio Uniforme de la Rama Judicial, págs. 2-3 (Informe Narrativo). Cada escala de sueldo contiene un tipo mínimo, diez tipos intermedios y un tipo máximo. íd. A su vez, el Plan procura conce-der incrementos horizontales de salarios a medida que se progresa de una escala retributiva a otra. íd., pág. 3. En iguales términos, el Plan persigue otorgar incrementos verticales de sueldo en cada escala salarial. íd. Al ubicar a un empleado en este sistema retributivo, resulta impera-tivo que “todo el personal quede ubicado en un tipo en la escala retributiva [que sea] igual o mayor a su salario actual”. íd., pág. 4.
Finalmente, amerita indicar que esta estructura retri-butiva fue erigida sobre “el principio de mérito como base fundamental de una administración pública efectiva y efi-ciente”, al igual que “el reconocimiento del esfuerzo individual y colectivo del personal en un marco de equidad y justicia”. (Énfasis nuestro). Íd., págs. 1-2 y 4. Ante ello, el Plan tiene como norte “la integración de una política que provea un trato justo y equitativo a todos los empleados de la Rama Judicial”. (Énfasis nuestro). Íd., pág. 4.
A la luz de lo anterior, resulta evidente que los regla-mentos de personal de la Rama Judicial y el Plan de 1998, reconocen que la clasificación y retribución de puestos en la Rama Judicial deben responder, en todo momento, al principio de mérito, a la equidad y la justicia, y al principio constitucional de igual paga por igual trabajo. Con ello en mente, y entendiendo que las secretarias originales erigen su causa de acción sobre la palestra de este principio, es necesario brindarle contenido a este mediante un estudio sereno del derecho constitucional a igual paga por igual trabajo.
*355 B. El derecho constitucional a igual paga por igual trabajo.
El Art. II, Sec. 16 de la Constitución de Puerto Rico indica que “[s]e reconoce el derecho de todo trabajador a recibir [...] igual paga por igual trabajo”. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. En Mercado Vega v. U.P.R., supra, págs. 284-285, al expresarnos acerca de este derecho constitucional, expusimos que la principal inspiración de la Convención Constituyente al adoptar “este mandato de justicia obrera fue la realidad imperante en la época de su adopción cuando a las mujeres con frecuencia se les pagaba menos aunque rindieran la misma o mayor labor que el hombre”. De tal manera, reconocimos el interés de los padres de la Constitución de Puerto Rico por equiparar la paga que reciben las mujeres en comparación con los hombres, cuando ambos realizan labores que son iguales en su naturaleza.
Ahora bien, esta no es la única motivación detrás de la adopción de la garantía de rango constitucional bajo examen. Nuestra jurisprudencia también ha reconocido una segunda manifestación de este derecho constitucional. En concreto, en decisiones anteriores, en las cuales hemos examinado determinados reclamos relacionados con los planes de clasificación y retribución de otras ramas de go-bierno, hemos sido precisos en disponer que los principios de equidad y justicia en la fijación de los salarios de nues-tros empleados públicos, instaurados en los reglamentos y en las leyes de personal de dichas ramas hermanas, cons-tituyen una política pública que se deriva, y constituye una aplicación práctica, del derecho constitucional a recibir igual paga por igual trabajo.
Así, en Guzmán Rosario v. Depto. de Hacienda, 147 DPR 46, 52-53 (1998), establecimos lo siguiente:
La Constitución del Estado Libre Asociado de Puerto Rico re-conoce el derecho de todo trabajador a recibir igual paga por *356 igual trabajo. En armonía con esta expresión de nuestros cons-tituyentes, en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores del servicio público un tra-tamiento equitativo y justo en la fijación de sus sueldos y de-más formas de retribución. De hecho, este Tribunal ha recono-cido el alto interés público que reviste la legislación reguladora del empleo público y en especial la que reglamenta la retribución salarial. (Citaciones omitidas).
En iguales términos, en Nigaglioni v. Depto. De Salud, supra, pág. 190, reiteramos que
[n]o hay duda que en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores un trata-miento equitativo y justo en la fijación de su salario y demás formas de retribución. Esta política pública, a su vez, se en-marca en el derecho de todo trabajador a recibir igual paga por igual trabajo, que consagra la Constitución del Estado Libre Asociado de Puerto Rico. (Enfasis nuestro).
A su vez, en Ortiz Ortiz v. Depto. de Hacienda, supra, págs. 220-221, establecimos que el área de la retri-bución del empleado público es una de las más importantes para facilitar la aplicación del principio de mérito, el cual procura la mayor uniformidad, equidad y justicia en la ad-ministración pública. Igualmente, añadimos que el princi-pio de mérito es cónsono con el principio constitucional de igual paga por igual trabajo, el cual busca propiciar la uni-formidad, la equidad y la justicia en la fijación de los suel-dos de todos los empleados del servicio público. Id.
Asimismo, en Santiago Declet v. Depto. de la Familia, supra, expusimos nuevamente esta modalidad del derecho constitucional bajo examen, al disponer que la ex-tensión de los beneficios reconocidos a un empleado al am-paro de un plan de clasificación y retribución son extensi-vos a todos los otros empleados igualmente situados. Ello, pues, “[d]e este modo se reconoce en términos prácticos el Derecho Constitucional de todo trabajador de recibir igual paga por igual trabajo”. Id., pág. 219.
*357 Por último, es propicio apuntalar que este principio no es óbice para la otorgación de salarios distintos a personas clasificadas en la misma escala salarial, siempre y cuando exista una justificación objetiva para la diferencia de compensación ante la igualdad de la labor rendida. Esta justificación objetiva puede fundarse, a modo de ejemplo, en los factores siguientes: los años de servicio que ha prestado un empleado; la demanda u oferta en el mercado de trabajo; las habilidades y destrezas necesarias para realizar el trabajo, y el grado de complejidad de la tarea realizada, entre otros factores. Aulet Lebrón v. Depto. de Servicios Sociales, supra, pág. 44; Mercado Vega v. U.P.R., supra, pág. 284.
A la luz de todo lo anterior, concluimos que nuestra jurisprudencia ha reconocido diáfanamente que los reglamentos y las leyes de personal, al exigir que la justicia y la equidad sean los criterios rectores en la fijación de los salarios de los empleados públicos y en la creación e implementación de planes de clasificación y retribución, viabilizan de forma práctica el derecho constitucional a que todo trabajador devengue igual salario por igual labor, sin distinción del sexo del empleado. Sin lugar a dudas, es posible constatar que la referida garantía de rango constitucional, además de prohibir la práctica de brindarle salarios inferiores a una mujer, a pesar de esta rendir un trabajo igual en su naturaleza que un hombre, también cobija en su ámbito protector a todo trabajador —hombre o mujer— que reciba un salario injusto en comparación con los salarios obtenidos por sus pares, cuando ambos laboren en tareas y funciones de igual naturaleza y no exista criterio objetivo alguno que justifique tal disparidad.(13)
*358 Descansando en lo anterior, pasemos a examinar si las secretarias originales poseen un derecho reglamentario a recibir igual paga por igual trabajo en comparación con las secretarias ascendidas.
C. El derecho de las secretarias originales a la equiparación solicitada
En los recursos ante nuestra consideración, encontra-mos que las secretarias ascendidas y las secretarias origi-nales ocupan el mismo puesto en el Plan de Clasificación y Retribución de 1998: secretarias de servicios de sala. A pe-sar de ello, las secretarias ascendidas devengan un salario mayor que aquel devengado por las secretarias originales. Ello como resultado de la simultánea aplicación del Art. 10.4(b) del Reglamento de Administración del Sistema de Personal, supra, y la entrada en vigor del Plan de 1998.
Las secretarias originales se oponen a esta diferencia en sueldo por entender que merecen recibir una compensación basada en los mismos términos que los utilizados para fijar el salario de las secretarias ascendidas. A esos efectos, soli-citan que el sueldo fijado en la escala salarial implantada con el Plan de 1998, refleje el número de pasos alcanzados antes de implantarse el referido Plan, para así recibir un trato igual a aquel recibido por las secretarias ascendidas. Añaden que tal proceder es imperativo ante el hecho de que ellas poseen más años de experiencia que las secretarias ascendidas en el desempeño del cargo que ocupan y que no reconocerle los pasos alcanzados antes de implantarse el Plan constituye una violación al principio reglamentario de igual paga por igual trabajo. Les asiste la razón.
Según lo indicamos, los reglamentos de personal le or-denan a la Rama Judicial que, al crear e implantar sus planes de clasificación y retribución, observen la equidad, la justicia, el principio de mérito y la aplicación efectiva del derecho constitucional a igual paga por igual trabajo. En específico, estos reglamentos disponen que un empleado *359 habrá de recibir una retribución justa que guarde propor-ción con los servicios que presta y que esté en plena armo-nía con el principio constitucional de igual paga por igual trabajo, reconociendo siempre el esfuerzo individual y co-lectivo del empleado dentro de un marco de equidad y justicia.
Al otorgarle contenido a esta exigencia reglamentaria, a la luz del principio constitucional de igual paga por igual trabajo, encontramos que nuestra jurisprudencia ha re-suelto que la política pública de brindarle a los trabajado-res públicos un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución, resulta ser una aplicación práctica del derecho constitucional bajo examen. Más aun, hemos sido diáfanos en disponer que, como corolario del derecho constitucional a recibir igual paga por igual trabajo, corresponde otorgar salarios distin-tos a personas que ejercen las mismas funciones, cuando ello se justifique objetivamente en los méritos o los años de servicio prestados por un empleado.
Es en función de esta normativa que corresponde equi-parar el salario de las secretarias originales con aquél de-vengado por las secretarias ascendidas, mediante el ajuste del sueldo actual de las secretarias originales a través del reconocimiento del beneficio económico que estas hubiesen devengado si se les hubiese reconocido el número de pasos alcanzados en su escala salarial antes de implantarse el Plan de 1998. Proceder de otra manera constituye una vio-lación del principio reglamentario y constitucional de igual paga por igual trabajo, el cual exige que, en la fijación del sueldo de las secretarias originales, se respete el principio de mérito y se le otorgue un salario justificado objetiva-mente sobre la base de sus méritos y sus años de experien-cia como secretarias de servicios de sala. Debido a que las secretarias ascendidas poseen un derecho reglamentario a que se les reconozca el número de pasos que habían alcan-zado en su antigua escala salarial, y entendiendo que ese *360 derecho ha creado una disparidad de sueldo entre las se-cretarias originales y ascendidas, la cual omite reconocer los años de servicios de las secretarias originales en fun-ción del principio de mérito —corolario del derecho a igual paga por igual trabajo— la OAT está obligada a recono-cerle a las secretarias originales en su nueva escala sala-rial, el beneficio económico que derivarían del reconoci-miento del número de pasos que habían alcanzado al amparo de su antigua escala salarial, antes de implantarse el Plan de 1998. Solo así se cumple con el principio regla-mentario y constitucional de igual paga por igual trabajo.
VII
Por todo lo anterior, procede que la OAT les reconozca a las secretarias ascendidas en la escala salarial que les apli-caba luego de implantarse el Plan de 1998, el número de pasos por mérito o años de servicios que habían alcanzado en su antigua escala salarial, antes de ser ascendidas al puesto de secretarias de servicios de sala. Ello al amparo de su derecho a un debido proceso de ley y de cara al Art. 10.4(b) del Reglamento de Administración de Personal, supra. Igualmente, la OAT debe ajustar el salario de las secreta-rias originales peticionarias para que este refleje el benefi-cio económico que hubiesen recibido de habérseles recono-cido en su nueva escala salarial el número de pasos que habían alcanzado en su antigua escala salarial, antes de implantarse el Plan de 1998. Ello en función de su derecho reglamentario a recibir igual paga por igual trabajo, y a ser remuneradas conforme al principio de mérito, a la justicia y a la equidad.
En el caso de las secretarias ascendidas, los beneficios aquí reconocidos tendrán efecto retroactivo a la fecha en la cual la OAT dejó de pagarles el salario que les correspondía en derecho una vez fueron ascendidas al puesto de secreta- *361 rías de servicios de sala. Respecto a las secretarias origina-les, estas cobrarán los beneficios aquí reconocidos de forma retroactiva a la fecha cuando se implantó el Plan de 1998.
VIII
En consideración a los fundamentos discutidos, se modi-fica la sentencia del Tribunal de Apelaciones y se ordena a la Junta a realizar los cómputos correspondientes para ajustar el salario de las secretarias ascendidas y las secre-tarias originales, acorde con los pronunciamientos que for-man parte de esta opinión.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino. El Juez Presidente Señor Hernández Denton se inhibió.

 Las peticionarias en el caso de epígrafe son: Gladys Rivera Padilla, Iraida Erazo Ortega, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Olive-ras Martínez, Gladys Castillo Rodríguez, Minerva Colón Nieves, Ramonita Rivera Tarraza, Carmen M. Meléndez Pérez, Denise Marín Rodríguez, María del R. Carrión Vega, Sandra Rivera Bauzá, Elizabeth Mulero Maldonado y María del C. Barroso Hernández.

 Este artículo disponía lo siguiente al momento de otorgarse los ascensos en disputa:
“También recibirán una retribución sobre el mínimo los funcionarios y emplea-dos que sean ascendidos, aumentándose el mismo número de pasos que sobre el mínimo de la escala anterior tuvieran”. (Énfasis nuestro). 4 LPRA Ap. XIII, R. 10.4(b) (ed. 1994).

 Un paso representa un incremento de sueldo que corresponde a un nivel o tipo intermedio de determinada escala salarial. Véanse: Nigaglioni v. Depto. de Salud, 149 DPR 180, 206-207 esc. 1 (1999), citando a Aponte v. Srio. de Hacienda, ELA, 125 DPR 610, 615 (1990).

 Por causa de esa enmienda, el articulado indicado ahora expone lo siguiente:
“Todo empleado que ascienda percibirá retribución al tipo mínimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajustará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiera recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio”. 4 LPRA Ap. XIII, R. 10.4(b).

 Apéndice, Petición de certiorari, pág. 101.

 Las peticionarias en el caso de autos son: Ada R. Burgos Martínez, Mirnaly Agosto Ortiz, Yeisa Prado Lozada, Yesenia Reyes Filomeno, Ivonne Irrizary Quiles, Betzaida Santiago Vargas, Marta Pérez París, Gladys Rivera Padilla, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Denise Marín Rodríguez, Elizabeth Mulero Maldonado, María del Carmen Barroso Hernández, Minerva Colón Nieves, Iraida Erazo Ortega y Sandra Rivera Bauzá.

 Amerita indicar que esta querella fue presentada por secretarias y oficinistas que fueron ascendidas a la posición de secretarias de servicios de sala y a otras posiciones en el sistema uniforme de la Rama Judicial. Aunque la mayoría de las querellantes eran secretarias auxiliares que fueron ascendidas al puesto de secreta-rias de servicios de sala, sabemos que no todas las querellantes fueron ascendidas al referido puesto y no todas provinieron del puesto de secretarias auxiliares. Para fines de facilitar la discusión de los hechos del caso ante nos, ubicaremos a todas las peticionarias de este segundo caso con el calificativo de secretarias ascendidas.

 Brunilda Rodríguez Colón v. Directora Administrativa de los Tribunales, KLRA0600847 y KLRA0600851, resuelto el 30 de abril de 2007.

 Moción Asumiendo Representación Legal y Otros Extremos, pág. 2, Apéndice CC-2010-0620, págs. 166-167. Esta moción fue aceptada por la Junta el 24 de mayo de 2005, Íd., págs. 168.

 En lo pertinente, la Resolución EP-99-01, supra, provee lo siguiente:
“Previa recomendación de la Directora Administrativa de los Tribunales, se en-miendan los siguientes artículos del Reglamento de la Administración del Sistema de Personal de la Rama Judicial:
9.3 Ajuste por Reasignación de Escala
10.4 Retribución sobre el Mínimo
b) Ascenso
Todo empleado que ascienda percibirá retribución al tipo mínimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajustará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiere recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio.
Esta Resolución tendrá vigencia inmediata [...]”.

 Al contrario, entendemos que el Plan está supeditado al Reglamento de la Administración del Sistema de Personal, el cual, a su vez, está sujeto a las Reglas del Sistema de Personal. Incluso, los memorandos emitidos por la OAT para implantar el Plan, tampoco articulan prohibición alguna en torno a la coexistencia del texto del Art. 10.4(b), supra, previo a ser enmendado, y la implantación del Plan. Véanse: Memorando Núm. 80, Directora de la OAT, Implantación del Nuevo Plan de Clasifi-cación y Retribución, 2 de septiembre de 1998; Memorando Núm. 33, Directora In-terina de la OAT, Norma de Ascenso para el Plan de Clasificación de la Rama Judicial aprobado el 1 de julio de 1998, 2 de agosto de 1999; Memorando Núm. 148, Directora de la OAT, Procedimiento ante el Comité de Revisión del Nuevo Plan de Clasificación y Retribución que Entró en Vigor el 1 de julio de 1998,1 de diciembre de 1998.

 Amerita señalar que en Santiago v. Depto. de la Familia, 153 DPR 208, 218-220 (2001), establecimos que cuando una agencia comete un error al implantar un nuevo plan de clasificación y retribución, este error no crea derechos adquiridos ni impide que se rectifique. “Así, en relación con los planes de clasificación o retribución, un empleado no puede ampararse en un error administrativo para reclamar la aplicación de una disposición reglamentaria que le resulte más ventajosa”. Íd., pág. 218.
No obstante, el caso citado es distinto en su naturaleza a los casos que nos ocupan. A diferencia de la controversia surgida en los casos ante nos, en Santiago v. Depto. de la Familia, supra, sí existía un error administrativo, a saber: la adscripción de una clase de puesto a una escala retributiva incorrecta. Además, es imperativo tener presente que los hechos desarrollados en ese caso surgieron al amparo de la Ley de Retribución Uniforme de 1979 y el Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal. Ante ello, el análisis empleado en este caso no aplica automáticamente a las controversias que surjan al amparo de las leyes y los reglamentos que rigen el sistema de personal de la Rama Judicial. Tampoco existe similitud alguna entre las disposiciones legales invocadas en ambos casos.

 Sostenemos lo anterior en las expresiones vertidas en el Diario de Sesiones de la Asamblea Constituyente, en el cual se expresó que el derecho bajo examen “interesa evitar discrímenes de una parte e irritaciones de otra, producidas cuando la compensación diferente carece de justificación frente a la igualdad de la labor rendida”. (Énfasis en el original). Mercado Vega v. U.P.R., supra, pág. 284.